IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE RODRIGUEZ, individually and as parent and legal guardian of A.R. and B.R., | § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| SOUTHERN HEALTH PARTNERS, INC. d/b/a SHP VISTA HEALTH MANAGEMENT, INC.; NAVARRO COUNTY; LINDA HULLETT; and DR. GRADY SHAW; | § § § § § § | |
| *Defendants*. | § § | |

---

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Irene Rodriguez ("Plaintiff"), individually and as parent and legal guardian of A.R. and B.R., files this Original Complaint against Southern Health Partners, Inc. d/b/a SHP Health Vista Management, Inc.; Navarro County; Linda Hullett; and Dr. Grady Shaw; ("Defendants"), and would respectfully show the Court the following:

**I.
INTRODUCTION**

1.  This lawsuit alleges that Southern Health Partners d/b/a SHP Health Vista Management, Inc. ("SHP"), which had been contracted to provide medical care in the Navarro County Jail, Linda Hullett, a nurse employed by SHP at the jail, and Dr. Grady

Shaw were negligent in failing to provide pre-natal care to Irene Rodriguez while she was incarcerated at the jail.  SHP and its staff ignored requests for care by Rodriguez as well as obvious signs that she was having problems with her pregnancy, resulting in the premature birth of twins A.R. and B.R. and catastrophic injuries to them.  The lawsuit further asserts a civil rights claim brought under 42 U.S.C. § 1983 arising from the deliberate indifference of staff at the jail towards Plaintiff's serious medical needs, as well as unlawful conditions of confinement at the Navarro County Jail.  Namely, SHP sacrificed the needs of the inmates it had assumed charge of in favor of its bottom line.  It was jail policy to refuse sending anyone to the hospital—in an effort to avoid picking up the bill—until there was a manifest emergency, which is too late. This miserly approach to inmate health was compounded by the fact that SHP did not have any medical staff at all at the jail overnight, and no other jail staff was trained to recognize the need to call an ambulance.  Such a policy is wholly inconsistent with the medical standard of care and in this case, directly caused the harm alleged herein.  Navarro County signed off on SHP's management of the jail medical care, and furthermore, has a duty under Texas law to provide a "safe and suitable" jail, rather than a constitutionally deficient one.

2. Irene Rodriguez became incarcerated at the Navarro County Jail as a pretrial detainee in late December 2017.  Despite knowing of her pregnancy with twins, which requires closer medical attention than a single pregnancy, jail medical staff refused to allow Rodriguez to attend a pre-scheduled doctor's appointment on December 28.  Then, despite mounting signs over approximately the next ten days that there were problems with Rodriguez's pregnancy and that premature birth of the twins was possible—including the

passing of her mucous plug, fluid discharge, and cervical contractions—SHP staff refused to take Rodriguez to a hospital. Instead, the nurse at the jail simply sent Rodriguez back to her cell. Dr. Shaw saw Rodriguez on December 29th, but only measured her stomach and didn't examine her in any other way or address the concerns associated with a pregnancy involving twins in a jail setting. Ultimately, the twins were born very prematurely with catastrophic physical maladies on January 9th.

3.   But for SHP's negligence, as well as the deliberate indifference of jail staff, insufficient medical staff at the jail, and a policy of not letting inmates go to the hospital, the premature birth and concomitant catastrophic injuries to the twins could have been avoided.

## II.
## PARTIES

4.   Plaintiff Irene Rodriguez is a resident of Corsicana, Texas.

5.   Defendant SHP is a Delaware company with its headquarters in Chattanooga, Tennessee and may be served through its registered agent CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

6.   Defendant Navarro County is a municipality formed under the laws of the State of Texas and may be served though its County Judge, H.M. Davenport, Jr., at 300 West 3rd Ave. Suite 102, Corsicana, TX 75110.

7.   Linda Hullett is a resident of Texas and an employee of SHP and can be served at her place of employment, the Navarro County Jail, 300 West 2nd Ave., Corsicana, TX 75110.

8.   Dr. Grady Shaw is a resident of Texas and can be served at his home address,

1613 Glenbrook St., Corsicana, TX 75110.

## III.
## JURISDICTION AND VENUE

9. The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiffs are suing for relief under 42 U.S.C. § 1983 and this action arises under the Constitution, laws, or treaties of the United States.

10. The Court has supplemental jurisdiction over the state law negligence claims under 28 U.S.C. § 1367 because they are so related to the claims under § 1983 that they form part of the same case or controversy. Moreover, these claims do not raise any novel or complex issues of state law.

11. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 as this is the judicial district in which at least one Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

## IV.
## FACTS

12. On or about December 22, 2017, while she was 25-26 weeks pregnant, Plaintiff was arrested and confined to the Navarro County Jail.

13. Plaintiff notified the jail that she was pregnant with twins.

14. Notwithstanding the knowledge that Plaintiff was pregnant, Defendants refused to follow up with her previous health care providers to obtain her medical history.

15. The jail also told Plaintiff that a nurse would be present at the jail 24-hours-per-day in case any problems arose with her pregnancy. However, this was not true: in fact, there was no nurse present between the hours of approximately 10 p.m. and 7 a.m.

16. Plaintiff notified Defendants that she had a pending doctor's appointment in Navarro County on December 28th, 2017 to follow up on her pregnancy and asked to be allowed to keep this appointment.

17. Defendants denied her request.

18. Plaintiff's appointment had been scheduled prior to her detainment, and under the serious circumstances of her pregnancy, there was no reasonable basis not to allow Plaintiff's request.

19. On or about December 28th, 2017, Plaintiff notified jail staff in writing that she had lost her mucus plug and requested to go to the hospital to see a specialist, because the discharge of her mucus plug signaled that childbirth was imminent.

20. This request was denied by Defendants.

21. Over approximately the following two weeks, Plaintiff continued to discharge fluid and became increasingly concerned about her pregnancy and the likelihood of premature birth. Plaintiff repeatedly gave written notice to jail staff, including Defendants, that she was concerned about her pregnancy and expected the babies to be born at any time.

22. However, the jail and its medical staff did nothing to address these concerns. Defendants and staff at the jail were completely indifferent to Ms. Rodriguez's pleas for help.

23. On or about December 29th, Plaintiff saw Dr. Grady Shaw. Despite knowing that she had lost her mucus plug, he measured her stomach but did not examine her or do anything else to address her concerns that she was about to give birth prematurely. This

was the only time that Plaintiff was seen by Dr. Shaw. He took no further action, nor did he schedule a follow-up of any kind.

24. On or about January 5th or 6th, Plaintiff was finally seen by Defendant Nurse Hullett. Plaintiff told her that she was having contractions. Hullett examined Plaintiff and confirmed that she was having contractions; these were at regular intervals approximately three minutes apart. Just as with the passing of the mucus plug, this is a strong indicator of impending childbirth.

25. Nonetheless, Hullett would not allow Plaintiff to see a doctor or go to the hospital. Instead, Plaintiff was once again sent back to her cell.

26. By January 9th, at approximately 3 a.m., the contractions had become so strong that Plaintiff notified the guards that she needed urgent attention. Despite the fact that she had been told that a nurse would be on-site around the clock, no medical staff was at the jail at that time.

27. The guards did not call an ambulance or take Plaintiff to the hospital; instead, they called Nurse Hullett on the phone. No one who was physically present had any medical training at all.

28. Plaintiff's contractions were now timed at approximately one minute apart. Contractions of increasing strength and frequency are yet another strong indicator of impending childbirth. However, Plaintiff was still not allowed to go to the hospital or see a doctor.

29. Hullett decided instead that it was sufficient to simply keep Plaintiff under observation, even though no one qualified to deliver babies was present at the jail.

30. Two hours later, just after 5 a.m., Plaintiff began giving birth as she walked down the hall of the jail. She was taken back to her cell where she waited, with A.R. partially delivered, for EMS to arrive.

31. It was at this point the jail finally realized it needed to get Plaintiff to a hospital and called EMS.

32. EMS arrived and assisted in delivering A.R. at approximately 5:40 a.m. B.R. was delivered at 5:50 a.m. Both of these births occurred in Plaintiff's cell; the EMS report states that "a sterile environment was not able to be established." Plaintiff and the baby twins were then transported to the Navarro Regional Hospital.

33. Later the same day, Plaintiff and the baby twins were transported again to Baylor Scott & White Medical Center in Dallas. There, it was noted in her records that the pregnancy was complicated by "late limited prenatal care."

34. The twins were later diagnosed with cerebral palsy, renal failure, respiratory failure, and numerous other extremely serious health issues, both short- and long-term.

35. The Navarro County Jail's and SHP's failure to provide proper prenatal care, including access to a hospital and/or a physician when they knew it was very likely Plaintiff was at serious risk of giving premature birth, caused the harms described above to her and the twins.

36. Specifically, had they heeded the warning signs and gotten proper care for Plaintiff, it is more likely than not that the premature birth and the complications listed above would have been averted.

37. Similarly, Dr. Shaw's failure to do anything more than measure Plaintiff's

stomach when she was exhibiting strong indicators of imminent premature birth fell well short of the standard of care. Had he taken proper action, including but not limited to performing a full examination, referring Plaintiff to a prenatal specialist, and/or admitting her to a hospital, it is more likely than not that the premature birth and the complications listed above would have been averted.

38. Throughout Plaintiff's confinement, the medical staff at Navarro County Jail consisted of, at most, one nurse at any given time. Between approximately 10 p.m. and 7 a.m., there was no medical staff at the jail. Worse, there was no one else present on staff who was trained to recognize serious medical needs that required emergency care.

39. This might not have been so unreasonable if it had been accompanied by a policy that allowed inmates to go to the hospital, or made some other appropriate accommodation, when it was very likely that the inmate would require emergency medical care at any moment, as was the case with Plaintiff and her complicated pregnancy.

40. However, SHP's policy was the opposite: they refused to send anyone to the hospital unless there was a manifest emergency, in other words, when the damage was already done.

41. This is exactly what happened to Plaintiff, who plead repeatedly to the jail to be taken to the hospital. Tragically, she was refused, which resulted in her twins being born with life-long catastrophic illnesses.

## V.
## CAUSE OF ACTION UNDER 42 U.S.C. § 1983

*Navarro County's and SHP's Unlawful Conditions of Confinement*

42. All preceding paragraphs are incorporated here by reference.

43. At all times material to this Complaint, Navarro County and SHP acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Navarro County.

44. Acting under color of law, Defendants Navarro County and SHP deprived Plaintiff of the rights and privileges secured to her by the Eighth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment. Plaintiff pleads her case under the alternative theories of conditions of confinement and episodic acts or omissions.[1]

45. The constitutionally inadequate system of medical care – the conditions at the Navarro County Jail – caused Plaintiff to suffer a deprivation of her constitutional rights. These conditions of Plaintiff's confinement as set forth in this Complaint were not reasonably related to a legitimate governmental purpose. These conditions amounted to punishment before Plaintiff was judged guilty and thus violated due process of law. Navarro County's and SHP's intent to punish Plaintiff may be inferred from their decision to expose pretrial detainees such as Plaintiff to an unconstitutional condition. In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of pretrial confinement.

---

[1] Plaintiffs may plead the alternative theories of conditions of confinement and episodic acts or omissions in a jail medical care case under 42 U.S.C. § 1983. *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

46. Navarro County and SHP are liable to Plaintiff under 42 U.S.C. § 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail.

47. The challenged conditions set forth in this Complaint violated Plaintiff's constitutional rights and were the foreseeable product of the Navarro County Jail's long-term decision to allow SHP to staff the Jail with only a single nurse (and SHP's decision to do just that). This is woefully insufficient for a jail that houses over 200 people, and this lack of medical staff prevented confined persons such as Plaintiff from receiving constitutionally adequate medical care. As Plaintiff shows, the avoidable premature birth of her twins and their concomitant physical maladies were the result of the Navarro County Jail's gross inattention to the needs of detainees. In the absence of any legitimate penological or administrative goal, this amounts to punishment.

48. At all relevant times, except the rare occasions when Dr. Shaw was called in, there was only one nurse present at the Navarro County Jail. Jail staff without any medical training are simply incapable of sufficiently monitoring the health of detainees at anything approaching a required level of care. Staff at the Navarro County Jail failed to respond to numerous signs that Plaintiff was in imminent danger of giving birth prematurely. Furthermore, staff denied Plaintiff's multiple requests to see a doctor or go to the hospital.

49. Finally, it was the policy of the Navarro County Jail to refuse sending anyone to the hospital unless there was a manifest emergency; i.e., when it was too late to prevent the emergency.

50. Navarro County Jail policy was created and/or ratified by the Navarro County Sheriff's office and/or, in the alternative, SHP, which had been delegated the responsibility of forming policies related to medical care at the jail.

51. Preventing a pretrial detainee's access to medical care cannot be seen as anything other than an unconstitutional punishment.

52. By its actions and/or inactions as described above, Defendants Navarro County and SHP have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

*Deliberate Indifference by Individual Defendants*

53. All preceding paragraphs are incorporated here by reference.

54. At all times material to this Complaint, Defendants Hullett and Shaw (the "Individual Defendants") acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Navarro County.

55. The Individual Defendants' failure to provide proper medical care to Plaintiff constitutes deliberate indifference to her serious medical needs. Specifically, the Individual Defendants had been alerted to Plaintiff's likelihood of giving birth prematurely. They knew she had passed her mucus plug, and Hullett knew that she later experienced regular contractions indicative of imminent childbirth. Nonetheless, they were deliberately indifferent to Plaintiff's repeated requests to see a specialist or go to the hospital.

56. In other words, the Individual Defendants were aware that a substantial risk of serious harm to Plaintiff and her babies existed but disregarded that risk.

57. The risk of serious harm came to fruition when Plaintiff gave birth

prematurely in the jail to twins who both suffered from a variety of serious and debilitating conditions.

58.     By their actions and/or inactions as described above, the Individual Defendants have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

## VI.
## CAUSE OF ACTION: NEGLIGENCE

59.     All preceding paragraphs are incorporated here by reference.

60.     The medical neglect made the basis of this action and the resulting damages, injuries, and death was proximately caused by the negligent conduct of Dr. Grady Shaw, Linda Hullett, Southern Health Partners, Inc., and their agents, representatives, and/or employees.

61.     SHP is responsible for the negligent acts and/or omissions attributable to their employees, agents, officers, directors, supervisors and representatives under the theory of *respondeat superior*, or vicarious liability, because the acts and/or omissions of such persons occurred in the course and scope of their employment, agency or representative capacity.

62.     Defendants committed one or more of the following acts or omissions, either directly or through their employees, agents, officers, supervisors and representatives, each of which amounted to an act and/or omission which a reasonable person or entity would not have done in the same or similar circumstances, proximately causing the occurrences, injuries, and damages complained of herein:

    a.     Failed to monitor a serious medical condition;

      b.      Failed to diagnose a serious medical condition;

      c.      Failed to recognize Plaintiff's imminent premature delivery even as strong indicators of such continued to appear;

      d.      Failed to seek emergency medical treatment in a timely manner for a patient in danger of imminent premature childbirth;

      e.      Failed to adequately train employees and health care workers to detect and diagnose serious medical conditions or illnesses, such as premature childbirth;

      f.      Failed to staff a jail facility that housed over 200 inmates with an adequate number of qualified medical providers able to meet the medical needs of the inmate population, and more specifically, the medical needs of Plaintiff;

      g.      Failed to provide adequate treatment or medications to a patient with a known serious medical condition; and

      h.      Failed to supervise the staff providing medical care and services to inmates, including Plaintiff.

63. Plaintiff's twin pregnancy was riskier than a regular pregnancy, but her premature delivery could have been averted with timely intervention. Furthermore, or alternatively, the serious complications suffered by the twins would have been mitigated had they been born in a proper setting (such as a hospital), with trained medical staff, as opposed to Plaintiff's jail cell and only detention officers on hand. The above described acts of negligence by Defendants proximately caused the injuries to Plaintiff and her twins.

64. Defendants, including their employees, agents, officers, supervisors, and/or representatives, knew of the obvious signs of Plaintiff's imminent premature childbirth, but did nothing to treat her.

65. Each of these acts and omissions, singularly or in combination with others,

constituted negligence, or gross negligence, which proximately caused the occurrence made the basis of this action and proximately caused the injuries and damages alleged herein.

### *Vicarious Liability*

66. At the time of the incident described in the foregoing paragraphs, Linda Hullett was an agent, servant, and/or employee of SHP at the Navarro County Jail, and was acting within the course and scope of her authority as such agent, servant, and/or employee.

67. As a result of Defendants Hullett's negligent acts and/or omissions, Defendant SHP is vicariously liable for her actions.

68. Alternatively, if Defendant Hullett is determined to be an employee of an entity other than SHP, Plaintiff asserts that Defendants Hullett's employer is liable pursuant to the theory of *respondeat superior* or vicarious liability because her negligence occurred during the course and scope of her employment.

69. At the time of the incident described in the foregoing paragraphs, Dr. Grady Shaw was an agent, servant, and/or employee of SHP at the Navarro County Jail, and was acting within the course and scope of his authority as such agent, servant, and/or employee.

70. As a result of Defendants Shaw's negligent acts and/or omissions, Defendant SHP is vicariously liable for his actions.

71. Alternatively, if Defendant Shaw is determined to be an employee of an entity other than SHP, Plaintiff asserts that Defendants Shaw's employer is liable pursuant to the theory of *respondeat superior* or vicarious liability because his negligence occurred during the course and scope of his employment.

# VII.
# **DAMAGES**

53. As a direct and proximate result of the above described acts and omissions of Defendants, Plaintiffs, and those interests that Plaintiffs legally represent, have suffered serious damages.  Accordingly, Plaintiffs seek to recover all actual, compensatory, and exemplary damages which have resulted from Defendants' above described conduct. These damages include, but are not necessarily limited to, the following:

   a) Irene Rodriguez's physical suffering, both past and future;

   b) Irene Rodriguez's mental pain and anguish, both past and future;

   c) All reasonable and necessary medical expenses of Irene Rodriguez A.R., and B.R. that were caused in the past, or will in the future be incurred, due to the above described negligence of Defendants;

   d) A.R.'s physical suffering, both past and future;

   e) A.R.'s mental pain and anguish arising from the debilitating physical conditions she suffers as a result of Defendants' negligent conduct, described herein;

   f) All reasonable and necessary medical expenses, both past and future, associated with the medical treatment of A.R. for conditions that resulted from Defendants' negligent conduct, described herein;

   g) B.R.'s physical suffering, both past and future;

   h) B.R.'s mental pain and anguish arising from the debilitating physical conditions he suffers as a result of Defendants' negligent conduct, described herein;

   i) All reasonable and necessary medical expenses, both past and future, associated with the medical treatment of B.R. for conditions that resulted from Defendants' negligent conduct, described herein;

   j) All economic costs incurred by Irene Rodriguez, both past and future, in caring for A.R. and B.R. related to conditions caused by Defendants' negligent conduct, described herein;

   k) All economic costs incurred by A.R. and B.R., both past and future, in

  caring for themselves related to conditions caused by Defendants' negligent conduct, described herein;

l) Punitive damages against all Defendants except Navarro County;

m) Attorney's fees under 42 U.S.C. § 1983; and

n) Pre- and post-judgment interest in accordance with Texas law.

## VIII.
## JURY DEMAND

54. Plaintiffs demand a trial by jury.

## IX.
## PRAYER

Plaintiff Irene Rodriguez requests that Defendants Navarro County; Southern Health Partners, Inc. d/b/a SHP Health Vista Management, Inc.; Linda Hullett; and Dr. Grady Shaw be summoned to appear and answer and that upon final trial or hearing, a judgment be entered in favor of Plaintiffs and against the Defendants for:

  a) Compensatory and actual damages in an amount deemed sufficient by the trier of fact;

  b) Exemplary damages;

  c) Reasonable and necessary attorneys' fees under 42 U.S.C. § 1988;

  d) Costs of court;

  e) Pre-judgment and post-judgment interest at the highest rate permitted by law; and

  f) All such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,


By: __/s/ *Don Tittle*_____
     Don Tittle
     State Bar # 20080200
     don@dontittlelaw.com
     Roger Topham
     State Bar # 24100557
     roger@dontittlelaw.com
LAW OFFICES OF DON TITTLE
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
214/522-8400
214/389-1002- FAX