IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE RODRIGUEZ, individually and as parent and legal guardian of A.R. and B.R., | § § § § | |
| *Plaintiff,* | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-cv-00045-D |
| SOUTHERN HEALTH PARTNERS, INC. d/b/a SHP VISTA HEALTH MANAGEMENT, INC.; NAVARRO COUNTY; LINDA HULLETT, and DR. GRADY SHAW; | § § § § § § § | |
| *Defendants.* | § | |

**DEFENDANT NAVARRO COUNTY'S RULE 12 (b)(6) MOTION
TO DISMISS AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE OF SAID COURT:**

  **COMES NOW** Defendant Navarro County, Texas and files this its Motion to Dismiss, with Brief in Support. In support thereof, Defendant would show unto the Court as follows:

### I. Plaintiffs' Allegations Against Navarro County, Texas

  Plaintiffs' allegations against Navarro County are clearly insufficient to support any constitutional claim against Navarro County. The only allegations against Defendant Navarro County are as follows:

Complaint ¶ 1:  The lawsuit further asserts a civil rights claim, brought under 42 U.S.C. Sec. 1983 arising from the deliberate indifference of staff at the jail towards plaintiff's serious medical needs, as well as unlawful conditions of confinement at the Navarro County Jail... It was jail policy to refuse sending anyone to the

|  |  |
|---|---|
|  | hospital - in an effort to avoid picking up the bill - until there was a real emergency, which is too late.... SHP did not have medical staff at all at the jail overnight, and no other jail staff was trained to recognize the need to call an ambulance. Such a policy is wholly inconsistent with the medical standard of care in this case, directly causing the harm alleged herein. Navarro County signed off on SHP's management of the jail medical care, and furthermore, has a duty under Texas law to provide a "safe and suitable" jail, rather than a constitutionally deficient one. |
| Complaint ¶ 3: | But for SHP's negligence, as well as the deliberate indifference of jail staff, insufficient medical staff at the jail, and a policy of not letting inmates go to the hospital, the premature birth and concomitant catastrophic injuries to the twins could have been avoided. |
| Complaint ¶ 14 -22: | Nothwithstanding the knowledge that Plaintiff was pregnant, Defendants refused to follow up with her previous health care providers to obtain her medical history.<br><br>The jail also told Plaintiff that a nurse would be present at the jail 24-hours-per-day in case any problems arose with her pregnancy. However, this was not true: in fact, there was no nurse present between the hours of approximately 10 p.m. and 7 a.m.<br><br>Plaintiff notified Defendants that she had a pending doctor's appointment in Navarro County on December 28th, 2017 to follow up on her pregnancy and asked to be allowed to keep this appointment.<br><br>Defendants denied her request.<br><br>Plaintiff''s appointment had been scheduled prior to her detainment, and under the serious circumstances of her pregnancy, there was no reasonable basis not to allow Plaintiff's request.<br><br>On or about December 28th, 2017, Plaintiff notified jail staff in writing that she had lost her mucus plug and requested to go to the hospital to see a specialist, because the discharge of her mucus plug signaled that childbirth was imminent.<br><br>This request was denied by Defendants. |

|  |  |
|---|---|
|  | Over approximately the following two weeks, Plaintiff continued to discharge fluid and became increasingly concerned about her pregnancy and the likelihood of premature birth. Plaintiff repeatedly gave written notice to jail staff, including Defendants, that she was concerned about her pregnancy and expected the babies to be born at any time. |
|  | However, the jail and its medical staff did nothing to address these concerns. Defendants and staff at the jail were completely indifferent to Ms. Rodriguez's pleas for help. |
| Complaint ¶ 26 - 28: | By January 9th, at approximately 3 a.m., the contractions had become so strong that Plaintiff notified the guards that she needed urgent attention. Despite the fact that she had been told that a nurse would be on-site around the clock, no medical staff was at the jail at that time. |
|  | The guards did not call an ambulance or take Plaintiff to the hospital; instead, they called Nurse Hullett on the phone. No one who was physically present had any medical training at all. |
|  | Plaintiff's contractions were now timed at approximately one minute apart. Contractions of increasing strength and frequency are yet another strong indicator or impending childbirth. However, Plaintiff was still not allowed to go to the hospital or see a doctor. |
| Complaint ¶ 30 - 31: | Two hours later, just after 5 a.m., Plaintiff began giving birth as she walked down the hall of the jail. She was taken back to her cell where she waited, with A.R. partially delivered, for EMS to arrive. |
|  | It was at this point the jail finally realized it needed to get Plaintiff to a hospital and called EMS. |
| Complaint ¶ 35 - 36: | The Navarro County Jail's and SHP's failure to provide proper prenatal care, including access to a hospital and/or a physician when they knew it was very likely Plaintiff was at serious risk of giving premature birth, caused the harms described above to her and the twins. |
|  | Specifically, had they heeded the warning signs and gotten proper care for Plaintiff, it is more likely than not that the premature birth and the complications listed above would have been averted. |

| | |
|---|---|
| Complaint ¶ 38: | Throughout Plaintiff's confinement, the medical staff at Navarro County Jail consisted of, at most, one nurse at any given time. Between approximately 10 p.m. and 7 a.m., there was no medical staff at the jail. Worse, there was no one else present on staff who was trained to recognize serious medical needs that required emergency care. |
| Complaint ¶ 44 - 52: | Acting under color of law, Defendants Navarro County and SHP deprived Plaintiff of the rights and privileges secured to her by the Eight and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment. Plaintiff pleads her case under the alternative theories of conditions of confinement and episodic acts or omissions. |
| | The constitutionally inadequate system of medical care - the conditions at the Navarro County Jail - caused Plaintiff to suffer a deprivation of her constitutional rights. These conditions of Plaintiff's confinement as set forth in this Complaint were not reasonably related to a legitimate governmental purpose. These conditions amounted to punishment before Plaintiff was judged guilty and this violated due process of law. Navarro County's and SHP's intent to punish Plaintiff may be inferred from their decision to expose pretrial detainees such as Plaintiff to an unconstitutional condition. In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of pretrial confinement. |
| | Navarro County and SHP are liable to Plaintiff under 42 U.S.C.§ 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail. |
| | The challenged conditions set forth in this Complaint violated Plaintiff's constitutional rights and were the foreseeable product of the Navarro County Jail's long-term decision to allow SHP to staff the Jail with only a single nurse (and SHP's decision to do just that). This is woefully insufficient for a jail that houses over 200 people, and this lack of medical staff prevented confined persons such as Plaintiff from receiving constitutionally adequate medical care. As Plaintiff shows, the avoidable premature birth of her twins and their concomitant physical maladies were the result of the Navarro County Jail's |

> gross inattention to the needs of detainees. In the absence of any legitimate penological or administrative goal, this amount to punishment.
>
> At all relevant times, except the rare occasions when Dr. Shaw was called in, there was only one nurse present at the Navarro County Jail. Jail staff without any medical training are simply incapable of sufficiently monitoring the health of detainees at anything approaching a required level of care. Staff at the Navarro County Jail failed to respond to numerous signs that Plaintiff was in imminent danger of giving birth prematurely. Furthermore, staff denied Plaintiff's multiple requests to see a doctor or go to the hospital.
>
> Finally, it was the policy of the Navarro County Jail to refuse sending anyone to the hospital unless there was a manifest emergency; i.e., when it was too late to prevent the emergency.
>
> Navarro County Jail policy was created and/or ratified by the Navarro County Sheriff's office and/or, in the alternative, SHP, which had been delegated to responsibility of forming policies related to medical care at the jail.
>
> Preventing a pretrial detainee's access to medical care cannot be seen as anything other than an unconstitutional punishment.
>
> By its actions and/or inactions as described above, Defendants Navarro County and SHP have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

These are the only allegations that liberally could be read to be Plaintiff's allegations against Defendant Navarro County. These allegations are insufficient to subject Navarro County to suit in Federal Court, and the case against Defendant Navarro County should be dismissed with prejudice.

## II. Pleading Requirements

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *In re Katrina Canal Breaches Litig*.,

495 F.3d 191, 205 (5th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted). While the allegations need not be overly detailed, a plaintiff's pleading must provide the grounds for his entitlement to relief. *Id.* That *"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (*emphasis added*); see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal*, 556 U.S. at 678. Evaluating a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. <u>County Liability</u>

A governmental entity cannot be held liable for violations of Section 1983 under the theory of *respondeat superior*. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397 (1997); *see also Hudspeth v. City of Shreveport*, 2006 WL 3747446, at *19 (W.D. La. 2006), aff'd, 270 F. App'x 332 (5th Cir. 2008); *Williams v. Luna*, 909 F.2d 121 (5th Cir. 1990). To hold Navarro County liable for alleged constitutional violations under § 1983, Plaintiff must prove an underlying constitutional violation and that the constitutional

deprivation was caused by an official Navarro County policy, custom, or practice. *Monell v. Dep't of Soc' Svcs.*, 436 U.S. 658, 692 (1978).

The Fifth Circuit has defined "official policy" as:

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir. 1992).

Stated another way, governmental policy or custom "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) (citations omitted).

A plaintiff must also "specifically identify" the alleged policy, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001), and where alleging "policy based on a pattern," must show the "pattern ... occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of ... employees." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). Such "policy" must derive from the government entity's recognized policy maker. *See Wright v. Denison Indep. Sch. Dist.*, 2017 WL 2262778, at

\*4 (E.D. Tex. 2017).  This ensures plaintiffs do not saddle government entities with vicarious liability for the actions of its agents not in accord with policy.  *See Board of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403-04 (1997) ("Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability.").  Regarding specificity of allegations required, this Court has held that generic assertions of liability will not suffice.  *See Wright*, 2017 WL 2262778, at \*4.  A plaintiff suing a government entity and claiming some policy of the entity harmed them "should be able to muster allegations of 'past incidents of misconduct to others, multiple harms that occurred to the plaintiffs themselves, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy ....' " *Id.* at \*4 (*citing Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011) ); *Williams v. City of Denton, Texas*, No. 4:17-CV-00811, 2019 WL 438403, at \*7-8 (E.D. Tex. Jan. 10, 2019), report and recommendation adopted, No. 4:17-CV-00811, 2019 WL 430913 (E.D. Tex. Feb. 4, 2019).

A plaintiff asserting Section 1983 claims is required to plead specific facts, not merely conclusory allegations, with sufficient particularity to meet all elements of recovery. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).  "This heightened pleading requirement applies to allegations of municipal custom or policy." *Id.*  Thus, to survive summary judgment, Plaintiff must provide specific facts to support his assertion that Navarro County's policies violated his constitutional rights.  *See Id.*  "These requirements must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability."  *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (internal quotations omitted).

To impose liability on a local government under section 1983, proof of the three elements is required: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't. Of Social Sciences*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, so any unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by local government employees do not trigger liability. *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th. Cir. 1984), cert. denied, 472 U.S. 1016, 105 S. Ct. 3476 (1985); *McKee v. City of Rockwall*, 877 F.2d 409, 415 (5th Cir. 1989), cert. denied, 493 U.S. 1023, 107 L. Ed. 2d 746, 110 S. Ct. 727 (1990). The three attribution principles identified here - a policymaker, an official policy and the "moving force" of the policy - are necessary to distinguish individual violations perpetrated by local government employees from those that can be fairly identified as actions of the government itself.   As observed by the Fifth Circuit, mistakes in analyzing section 1983 municipal liability cases frequently begin with a failure to separate the three attribution principles and to consider each in light of relevant case law. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  Such an unofficial policy must have been effectively "adopted" by a policymaker, who showed deliberate indifference to the persistent widespread practice that was occurring, and the threat of deprivations of constitutional rights it caused, and did nothing to correct it.  As the *en banc* court stated in *Webster*, if "actions of city employees are to be used to prove a custom for which the municipality is liable, those actions *must have occurred for so long or so frequently that the course of conduct warrants the attribution to the [policymaker] of knowledge that the objectionable*

*conduct is the expected, accepted practice of city employees*." *Webster v. Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (emphasis added).

Deliberate indifference of this sort is a stringent test, and "a showing of simple or even heightened negligence will not suffice" to prove municipal culpability. *See Board of County Commissioners of Bryan County v. Brown*, 520 U.S. at 407, 117 S. Ct. at 1389, 1390 (1997). Stated another way, to establish county liability in this case, the "policy" must have been a "deliberate and conscious choice" by the policymaker. *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197 (1989). Likewise, if the plaintiff alleges an official written policy of the County, that too must have been adopted with deliberate indifference to the fact that the policy would result in the particular violation of which the plaintiff complains. *See, e.g. Benavides v. County of Wilson*, 955 F.2d 968, 973-74 (5th Cir. 1992).

In addition to culpability, there must be a direct causal link between the policy and the constitutional deprivation. *Monell* describes the high threshold of proof by stating that the policy must be the "moving force" behind the violation. *Monell*, 436 U.S. at 694, 98 S. Ct. at 2037-2038. So, in the present case, Plaintiffs must plead and prove both the causal link ("moving force") and the county's degree of culpability ("deliberate indifference" to federally protected rights). *Id.*

### IV. Plaintiff has Failed to State a Claim Against Defendant Navarro County

Here, all allegations of Plaintiff as to Defendant Navarro County are mere conclusions. Plaintiff has failed to allege specific official policy or policies that are in writing and adopted by a policy maker. Plaintiff alleges no policy maker at all. Plaintiff has failed

to allege and show unwritten policies that were specifically adopted by a policy maker with facts showing a deliberate indifference to persons in jail such as Plaintiff by continuing an existing widespread practice that would result in the constitutional violations of which Plaintiff complains. Navarro County may not be held liable by the doctrine of respondeat superior.

WHEREFORE, PREMISES CONSIDERED, Defendant respectfully requests that Defendant be dismissed with prejudice from the case at bar, and for any and all other relief, at law or in equity, to which the Defendant shows itself justly entitled.

Respectfully submitted,

**FLOWERS DAVIS, P.L.L.C.**
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
(903) 534-1650 Facsimile

_____
**ROBERT S. DAVIS**
State Bar No. 05544200
rsd@flowersdavis.com
Lead Attorney

**ATTORNEY FOR DEFENDANT,
NAVARRO COUNTY, TEXAS**

## **CERTIFICATE OF SERVICE**

I hereby certify that the above and foregoing instrument was served upon all counsel of record in the above entitled and numbered cause on February 24, 2020, in the following manner:

  X    Via ECF

_____
**Robert S. Davis**