IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE RODRIGUEZ, individually | § | |
| and as parent and legal guardian of | § | |
| A.R. and B.R., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:20-cv-00045-D |
| | § | |
| SOUTHERN HEALTH PARTNERS, INC.; | § | |
| NAVARRO COUNTY; LINDA | § | |
| HULLETT; and DR. GRADY SHAW; | § | |
| | § | |
| *Defendants*. | § | |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Pursuant to Rule 15(a)(1)(B), Plaintiff Irene Rodriguez ("Plaintiff"), individually and as parent and legal guardian of A.R. and B.R., files this First Amended Complaint against Southern Health Partners, Inc.; Navarro County; Linda Hullett; and Dr. Grady Shaw; ("Defendants"), and would respectfully show the Court the following:

**I.**
**INTRODUCTION**

1.      This lawsuit alleges that Southern Health Partners, Inc. ("SHP"), which had been contracted to provide medical care in the Navarro County Jail ("the Jail"), Linda Hullett, a nurse employed by SHP at the jail, and Dr. Grady Shaw were negligent in failing to provide pre-natal care to Irene Rodriguez while she was incarcerated at the jail.  SHP and its staff ignored requests for care by Rodriguez as well as obvious signs that she was having problems with her pregnancy, resulting in the premature birth of twins A.R. and B.R. and catastrophic injuries to them.  The lawsuit further

asserts a civil rights claim brought under 42 U.S.C. § 1983 arising from the deliberate indifference of staff at the jail towards Plaintiff's serious medical needs, as well as unlawful conditions of confinement at the Navarro County Jail. Namely, SHP sacrificed the needs of the inmates it had assumed charge of in favor of its bottom line. It was jail policy to refuse sending anyone to the hospital—in an effort to avoid picking up the bill—until there was a manifest emergency, which is too late. This miserly approach to inmate health was compounded by the fact that SHP did not have any medical staff at all at the jail overnight, and no other jail staff was trained to recognize the need to call an ambulance. Such a policy is wholly inconsistent with the medical standard of care and in this case, directly caused the harm alleged herein. Navarro County signed off on SHP's management of the jail medical care, and furthermore, has a duty under Texas law to provide a "safe and suitable" jail, rather than a constitutionally deficient one.

2.      Irene Rodriguez became incarcerated at the Navarro County Jail as a pretrial detainee in late December 2017. Despite knowing of her pregnancy with twins, which requires closer medical attention than a single pregnancy, jail medical staff refused to allow Rodriguez to attend a pre-scheduled doctor's appointment on December 28. Then, despite mounting signs over approximately the next ten days that there were problems with Rodriguez's pregnancy and that premature birth of the twins was possible—including the passing of her mucous plug, fluid discharge, and cervical contractions—SHP staff refused to take Rodriguez to a hospital. Instead, the nurse at the jail simply sent Rodriguez back to her cell. Dr. Shaw saw Rodriguez on December 29th, but only measured her stomach and didn't examine her in any other way or address the concerns associated with a pregnancy involving twins in a jail setting. Ultimately, the twins were born very prematurely with catastrophic physical maladies on January 9th.

3.      But for SHP's negligence, as well as the deliberate indifference of jail staff, insufficient medical staff at the jail, and a policy of not letting inmates go to the hospital, the

premature birth and concomitant catastrophic injuries to the twins would more likely than not have been avoided.

## II.
## PARTIES

4.      Plaintiff Irene Rodriguez is a resident of Corsicana, Texas.

5.      Defendant SHP is a Delaware company with its headquarters in Chattanooga, Tennessee and may be served through its registered agent CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

6.      Defendant Navarro County is a municipality formed under the laws of the State of Texas and may be served though its County Judge, H.M. Davenport, Jr., at 300 West 3rd Ave. Suite 102, Corsicana, TX 75110.

7.      Linda Hullett is a resident of Texas and an employee of SHP and can be served at her place of employment, the Navarro County Jail, 300 West 2nd Ave., Corsicana, TX 75110.

8.      Dr. Grady Shaw is a resident of Texas and can be served at his home address, 1613 Glenbrook St., Corsicana, TX 75110.

## III.
## JURISDICTION AND VENUE

9.      The Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 since Plaintiffs are suing for relief under 42 U.S.C. § 1983 and this action arises under the Constitution, laws, or treaties of the United States.

10.      The Court has supplemental jurisdiction over the state law negligence claims under 28 U.S.C. § 1367 because they are so related to the claims under § 1983 that they form part of the same case or controversy.  Moreover, these claims do not raise any novel or complex issues of state law.

11.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 as this

is the judicial district in which at least one Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

## IV.
## <u>FACTS</u>

### *Plaintiff's Pregnancy and the Lack of Medical Care Resulting In the Premature Birth of A.R & B.R*

12.     On or about December 22, 2017, while she was 25-26 weeks pregnant, Plaintiff was arrested and confined to the Navarro County Jail.

13.     Plaintiff notified the jail that she was pregnant with twins.

14.     Notwithstanding the knowledge that Plaintiff was pregnant, Defendants refused to follow up with her previous health care providers to obtain her medical history.

15.     The jail also told Plaintiff that a nurse would be present at the jail 24-hours-per-day in case any problems arose with her pregnancy.  However, this was not true: in fact, there was no nurse present between the hours of approximately 10 p.m. and 7 a.m.

16.     Plaintiff notified Defendants that she had a pending doctor's appointment in Navarro County on December 28th, 2017 to follow up on her pregnancy and asked to be allowed to keep this appointment.

17.     Defendants denied her request.

18.     Plaintiff's appointment had been scheduled prior to her detainment, and under the serious circumstances of her pregnancy, there was no reasonable basis not to allow Plaintiff's request.

19.     On or about December 28th, 2017, Plaintiff notified jail staff in writing that she had lost her mucus plug and requested to go to the hospital to see a specialist, because the discharge of her mucus plug signaled that childbirth was imminent.

20.     This request was denied by Defendants.

21.     Over approximately the following two weeks, Plaintiff continued to discharge fluid and became increasingly concerned about her pregnancy and the likelihood of premature birth. Plaintiff repeatedly gave written notice to jail staff, including Defendants, that she was concerned about her pregnancy and expected the babies to be born at any time.

22.     However, the jail and its medical staff did nothing to address these concerns. Defendants and staff at the jail were completely indifferent to Ms. Rodriguez's pleas for help.

23.     On or about December 29th, Plaintiff saw Dr. Grady Shaw. Despite knowing that she had lost her mucus plug, he measured her stomach but did not examine her or do anything else to address her concerns that she was about to give birth prematurely. This was the only time that Plaintiff was seen by Dr. Shaw. He took no further action, nor did he schedule a follow-up of any kind.

24.     On or about January 5th or 6th, Plaintiff was finally seen by Defendant Nurse Hullett. Plaintiff told her that she was having contractions. Hullett examined Plaintiff and confirmed that she was having contractions; these were at regular intervals approximately three minutes apart. Just as with the passing of the mucus plug, this is a strong indicator of impending childbirth.

25.     Nonetheless, Hullett would not allow Plaintiff to see a doctor or go to the hospital. Instead, Plaintiff was once again sent back to her cell.

26.     By January 9th, at approximately 3 a.m., the contractions had become so strong that Plaintiff notified the guards that she needed urgent attention. Despite the fact that she had been told that a nurse would be on-site around the clock, no medical staff was at the jail at that time.

27.     The guards did not call an ambulance or take Plaintiff to the hospital; instead, they called Nurse Hullett on the phone. No jail staff who was physically present had any medical training at all.

28.     Plaintiff's contractions were now timed at approximately one minute apart. Contractions of increasing strength and frequency are yet another strong indicator of impending childbirth.  However, Plaintiff was still not allowed to go to the hospital or see a doctor.

29.     Hullett decided instead that it was sufficient to simply keep Plaintiff under observation, even though no one qualified to deliver babies was present at the jail.  Moreover, even though there were no available medical observation cells, Hullett insisted that she be kept at the Jail rather than taken to the hospital immediately.  This meant that correctional officers wasted more than twenty minutes moving other inmates around to make room for Plaintiff in a medical observation cell.

30.     Just after 5 a.m., Plaintiff began giving birth as she walked down the hall of the jail. She was taken back to her cell where she waited, with A.R. partially delivered, for EMS to arrive.

31.     It was at this point the jail finally realized it needed to get Plaintiff to a hospital and called EMS.

32.     Immediately after being born, A.R. stopped breathing more than once.  A correctional officer (who, again, had no medical training) left Plaintiff and the baby to look for a nasal aspirator to clear mucus out of A.R.'s airway.  The officer could not find one, either because the Jail simply did not have one, or the correctional officers had not been trained on where medical supplies were kept.  Critical minutes were lost before EMS medics arrived and were able to clear A.R.'s airway. A.R. also required emergency treatment, which had also been unnecessarily delayed by Hullett's refusal to allow transportation to a hospital to be arranged earlier.

33.     Inability to breathe is especially dangerous for a pre-term baby, whose lungs are typically underdeveloped.

34.     This necessitated the dispatch of a *second* ambulance to the Jail, so that both Plaintiff and A.R. could be transported to the hospital.

35.     B.R. was delivered at 5:50 a.m.  Both of the twins' births occurred in Plaintiff's cell; the EMS report states that "a sterile environment was not able to be established."  Plaintiff and the baby twins were then transported to the Navarro Regional Hospital.

36.     Later the same day, Plaintiff and the baby twins were transported again to Baylor Scott & White Medical Center in Dallas.  There, it was noted in her records that the pregnancy was complicated by "late limited prenatal care."

37.     The twins were later diagnosed with cerebral palsy, renal failure, respiratory failure, and numerous other extremely serious health issues, both short- and long-term.

38.     It is widely known that premature birth can cause numerous short- and long-term complications for the baby, including those that A.R. and B.R. in fact suffered.

39.     It is also widely known that premature birth can be avoided or at least delayed with timely medical intervention.  Even a relatively short delay of one or two days significantly decreases the risk of birth complications and mitigates their severity.

40.     Furthermore, additional treatment can be provided to mitigate the risk and severity of complications associated with premature birth.

41.     As medically trained professionals, both Hullett and Shaw knew that premature birth involves serious medical risks, and that timely treatment can significantly mitigate those risks.  They also knew that any medical emergency—including premature birth—has a substantially better chance of an improved outcome if it can be immediately treated in a hospital setting, as opposed to a jail cell.

42.     Furthermore, Hullett and Shaw knew that there was a high likelihood that Plaintiff would go into labor at any moment.  They also knew that the system in place at the jail had a giant gap in medical care coverage at night.  They knew none of the non-medical staff had any idea how to respond to emergencies.  Nonetheless, they ignored these facts and decided to play Russian Roulette

with the lives of Plaintiff and her babies This is the very definition of "deliberate indifference."

43.    Defendants' failure to provide proper prenatal care, including access to a hospital and/or a physician when they knew it was very likely Plaintiff was at serious risk of giving premature birth, caused the harms described above to her and the twins.

44.    Specifically, had they heeded the warning signs and gotten proper care for Plaintiff, it is more likely than not that the premature birth and the complications listed above would have been averted.

45.     As for Defendant Shaw, his failure to do anything more than measure Plaintiff's stomach when she was exhibiting strong indicators of imminent premature birth fell well short of the standard of care.  Had he taken proper action, including but not limited to performing a full examination, referring Plaintiff to a prenatal specialist, and/or admitting her to a hospital, it is more likely than not that the premature birth and the complications listed above would have been averted.

### *Unlawful Policies of SHP and Navarro County*

46.    It is the duty of Navarro County and its law enforcement policymaker, its Sheriff and/or the Commissioners Court, to provide a safe and suitable jail for its convicted criminals and pre-trial detainees.  This duty includes a duty to provide basic, essential medical care.  Inmates have no other means of gaining access to necessary medical care.

47.    Navarro County has, for a number of years and including the time at issue in this lawsuit, contracted with SHP to provide all of the medical care at the Jail.

48.    The contract specifies exactly how many and what kind of medical staff are to be employed at the Jail, and at what times.

49.    The Sheriff and/or the Commissioners Court were well aware of the entire contents of the contract with SHP, and approved that contract.

50.    Throughout Plaintiff's confinement, the medical staff at Navarro County Jail

consisted of, at most, one nurse at any given time.

51.     Between approximately 10 p.m. and 7 a.m., there was no medical staff at the jail.

52.     Worse, there was no one else present on staff who was trained to recognize serious medical needs that required emergency care.  In fact, non-medical correctional staff had no medical or emergency training whatsoever.  In a system in which an inmate will not receive any care unless the need for it is recognized, it is a complete failure of that system to have substantial periods of time during which no staff member present has the training or ability to recognize that need.

53.     This level of staffing and total lack of medical or emergency training for non-medical personnel is insufficient and incapable of providing even the minimum standard of care at a facility that houses over 200 full time inmates.

54.     In particular, there is an approximately 9-hour gap every night during which there is not a single person at the jail who is professional trained to provide any kind of medical care or even be able to recognize an urgent need for medical attention.

55.     In other words, if an event occurs in which an inmate needs immediate medical attention, there is a 37.5% chance that no one who is capable of recognizing or responding to that situation will be present at the time.

56.     Both Navarro County were well aware of this huge gap in the Jail's capacity to respond to emergencies, yet they both approved of this staffing policy anyway.

57.     Furthermore, it was Navarro County and SHP policy at the Jail to refuse to send anyone to the hospital unless there was a manifest emergency—in other words, when the damage was already done.

58.     These policies make for a deadly combination.  On the one hand, inmates with serious medical conditions that require more than limited nursing care are not allowed to seek more advanced care at a hospital to prevent dangerous medical events before they happen.  Then, when the

emergencies do inevitably happen, there is a nearly 40% chance that not a single person at the jail will know how to recognize or respond to that emergency, greatly exacerbating the damage it will cause when every second that treatment is delayed matters.

59.     SHP and Navarro County essentially set a trap that was certain to cause some inmates to suffer far greater harm from medical conditions than they should.

60.     This is exactly what happened to Plaintiff, who begged Defendant Hullett and others at the Jail repeatedly to be taken to the hospital.  Tragically, she was refused.

61.     When Plaintiff began to give birth, no medical staff was on site, and no one at the Jail knew what to do.  A.R. was born with her airway clogged with mucus, and she was unable to breathe.  Jail staff did not know how to treat that situation, and A.R.'s airway was not fully cleared until EMS arrived sometime later.  Those few minutes make a big difference to a baby who cannot breathe.

62.     It goes without saying that Navarro County and SHP *could* allow inmates with serious health conditions to go to the hospital; they *could* make sure a nurse or doctor is on site at all times in case of emergency; they *could* provide some training to other correctional officers regarding the recognition of health emergencies and how to respond. They simply choose not to.

63.     Navarro County and SHP choose not to do any of those things for purely financial reasons.

64.     Navarro County wants to keep the costs of maintaining the Jail as low as possible; that is why it contracted with SHP in the first place.  Naturally, if SHP had to pay more for extra medical staff or training, that cost would be passed on to the County.  The cost for services outside the contract, such as hospital care or ambulance calls, comes out of Navarro County's pocket.

65.     On the other hand, SHP is a private company and exists only to make money.  Not only is it looking after its own bottom line when it cuts its costs maintaining the prison, but it also

has a very strong interest in keeping the County's costs low.  If it did not keep the County's costs as low as possible, SHP could easily lose the contract to a competitor.

66.     Indeed, this is standard operating procedure for SHP and the municipalities it works with.  For example, in October 2017, Madison County, Kentucky decided to renew its contract with SHP only through the end of January 2018 (only a 3-month renewal), after SHP announced a cost increase of $88,000 per year.  SHP responded by cutting on-site medical services to a paltry 12 hours per day, which would save Madison County $36,000 per year.

67.     That means that every inmate who went through the Madison County Jail and happened to suffer a medical emergency while they were there had a 50-50 chance that it would occur when no medical staff were on site.  Madison County and SHP were willing to place those inmates at significantly increased risk—and in fact, more risk than what they had previously determined to be the maximum allowable—for a mere $36,000.

68.     In short, Navarro County and SHP consistently choose their own bank accounts over the needs of the inmates.  The policies described here are a reflection of that preference, and were a direct cause of A.R.'s and B.R.'s premature birth in an unsafe environment and the resulting complications, which would otherwise have been avoidable.

## V.
## CAUSE OF ACTION UNDER 42 U.S.C. § 1983

### *Navarro County's and SHP's Liability Under* Monell

69.     All preceding paragraphs are incorporated here by reference.

70.     At all times material to this Complaint, Navarro County and SHP acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Navarro County.

71.     Navarro County has a non-delegable duty under Texas law and the U.S. Constitution to provide medical care to inmates at its Jail.  The County cannot absolve itself of this duty by simply paying someone else to carry it out.

72.     Likewise, by accepting the contract with Navarro County, SHP has taken on that same duty to meet the standard of care in its provision of medical services at the Jail.

73.     Navarro County's policymaker with authority over the Jail is its Sheriff, or alternatively, the Commissioners Court.

74.     Management at SHP has policymaking authority over the policies described in this lawsuit and utilized at the Navarro County Jail.  The Chief Executive Officer, or in the alternative, the Chief Operating Officer has policymaking authority for policies of the type alleged in this lawsuit.  Alternatively, SHP, as a single private entity, is itself a "policymaker" for purposes of § 1983 liability.

75.     The policies described in this Complaint are the product of both Navarro County and SHP, which collaborated and agreed on exactly how the provision of medical care at the Jail was to be carried out.

76.     Acting under color of law, Defendants Navarro County and SHP deprived Plaintiff of the rights and privileges secured to her by the Eighth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment.  Plaintiff pleads her case under the alternative theories of conditions of confinement and episodic acts or omissions.[1]

77.     The constitutionally inadequate system of medical care – the conditions at the Navarro County Jail – caused Plaintiff to suffer a deprivation of her constitutional rights. These conditions of Plaintiff's confinement as set forth in this Complaint were not reasonably related to a legitimate governmental purpose.  These conditions amounted to punishment before Plaintiff was judged guilty and thus violated due process of law.  Navarro County's and SHP's intent to punish

---

[1] Plaintiffs may plead the alternative theories of conditions of confinement and episodic acts or omissions in a jail medical care case under 42 U.S.C. § 1983.  *Shepherd v. Dallas County*, 591 F.3d 445, 452 (5th Cir. 2009).

Plaintiff may be inferred from their decision to expose pretrial detainees such as Plaintiff to an unconstitutional condition.  In other words, an official intent to punish may be inferred from general conditions, practices, rules, or restrictions of pretrial confinement.

78.   Navarro County and SHP are liable to Plaintiff under 42 U.S.C. § 1983 for creating, maintaining, and perpetuating the conditions of confinement that resulted in the constitutionally inadequate medical care at its Jail.

79.   The challenged conditions set forth in this Complaint violated Plaintiff's constitutional rights and were the foreseeable product of the Navarro County's and SHP's decision to staff the Jail with only a single nurse, and no medical staff at all for 9 hours per day.  This is woefully insufficient for a jail that houses over 200 people, and this lack of medical staff prevented confined persons such as Plaintiff from receiving constitutionally adequate medical care.  As Plaintiff shows, the avoidable premature birth of her twins and their concomitant physical maladies were the result of the Navarro County's and SHP's gross inattention to the needs of detainees.  In the absence of any legitimate penological or administrative goal, this amounts to punishment.

80.   Furthermore, Navarro County and SHP did not sufficiently train and/or supervise their staff at the Jail to ensure that they were able to recognize and respond to emergencies properly.

81.   Finally, it was the policy of the Navarro County Jail to refuse sending anyone to the hospital unless there was a manifest emergency; i.e., when it was too late to prevent the emergency.

82.   The above policies, either individually or in combination, prevent a pretrial detainee at the Navarro County Jail from having access to medical care.  None of these policies have a legitimate penological goal.  Preventing a pretrial detainee's access to medical care cannot be seen as anything other than an unconstitutional punishment, and is therefore an unlawful condition of confinement.

83.   In the alternative, Navarro County and SHP are liable because the policies, customs

or practices described above, including a failure to train and/or supervise their employees, were the moving force behind episodic acts or omissions which resulted in violations of Plaintiff's constitutional rights and caused the harm described in this lawsuit .

84.     By its actions and/or inactions as described above, Defendants Navarro County and SHP have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

### *Deliberate Indifference by Individual Defendants*

85.     All preceding paragraphs are incorporated here by reference.

86.     At all times material to this Complaint, Defendants Hullett and Shaw (the "Individual Defendants") acted under color of the statutes, customs, ordinances, and usage of the State of Texas and Navarro County.

87.     The Individual Defendants' failure to provide proper medical care to Plaintiff constitutes deliberate indifference to her serious medical needs.  Specifically, the Individual Defendants had been alerted to Plaintiff's likelihood of giving birth prematurely.  They knew she had passed her mucus plug, and Hullett knew that she later experienced regular contractions indicative of imminent childbirth.  Nonetheless, they were deliberately indifferent to Plaintiff's repeated requests to see a specialist or go to the hospital.

88.     In other words, the Individual Defendants were aware that a substantial risk of serious harm to Plaintiff and her babies existed but disregarded that risk.

89.     The risk of serious harm came to fruition when Plaintiff gave birth prematurely in the jail to twins who both suffered from a variety of serious and debilitating conditions.

90.     By their actions and/or inactions as described above, the Individual Defendants have violated 42 U.S.C. § 1983 and the constitutional provisions cited in this Complaint.

## VI.
## CAUSE OF ACTION: NEGLIGENCE

91.    All preceding paragraphs are incorporated here by reference.

92.    The medical neglect made the basis of this action and the resulting damages, injuries, and death was proximately caused by the negligent conduct of Dr. Grady Shaw, Linda Hullett, Southern Health Partners, Inc., and their agents, representatives, and/or employees.

93.    SHP is responsible for the negligent acts and/or omissions attributable to their employees, agents, officers, directors, supervisors and representatives under the theory of *respondeat superior*, or vicarious liability, because the acts and/or omissions of such persons occurred in the course and scope of their employment, agency or representative capacity.

94.    Defendants committed one or more of the following acts or omissions, either directly or through their employees, agents, officers, supervisors and representatives, each of which amounted to an act and/or omission which a reasonable person or entity would not have done in the same or similar circumstances, proximately causing the occurrences, injuries, and damages complained of herein:

    a.    Failed to monitor a serious medical condition;

    b.    Failed to diagnose a serious medical condition;

    c.    Failed to recognize Plaintiff's imminent premature delivery even as strong indicators of such continued to appear;

    d.    Failed to seek emergency medical treatment in a timely manner for a patient in danger of imminent premature childbirth;

    e.    Failed to adequately train employees and health care workers to detect and diagnose serious medical conditions or illnesses, such as premature childbirth;

    f.    Failed to staff a jail facility that housed over 200 inmates with an adequate number of qualified medical providers able to meet the medical needs of the inmate population, and more specifically, the medical needs of Plaintiff;

    g.    Failed to provide adequate treatment or medications to a patient with a

known serious medical condition; and

h.      Failed to supervise the staff providing medical care and services to inmates, including Plaintiff.

95.      Plaintiff's twin pregnancy was riskier than a regular pregnancy, but her premature delivery could have been averted with timely intervention.  Furthermore, or alternatively, the serious complications suffered by the twins would have been mitigated had they been born in a proper setting (such as a hospital), with trained medical staff, as opposed to Plaintiff's jail cell and only detention officers on hand.  The above described acts of negligence by Defendants proximately caused the injuries to Plaintiff and her twins.

96.      Defendants, including their employees, agents, officers, supervisors, and/or representatives, knew of the obvious signs of Plaintiff's imminent premature childbirth, but did nothing to treat her.

97.      Each of these acts and omissions, singularly or in combination with others, constituted negligence, or gross negligence, which proximately caused the occurrence made the basis of this action and proximately caused the injuries and damages alleged herein.

### *Vicarious Liability*

98.      At the time of the incident described in the foregoing paragraphs, Linda Hullett was an agent, servant, and/or employee of SHP at the Navarro County Jail, and was acting within the course and scope of her authority as such agent, servant, and/or employee.

99.      As a result of Defendants Hullett's negligent acts and/or omissions, Defendant SHP is vicariously liable for her actions.

100.      At the time of the incident described in the foregoing paragraphs, Dr. Grady Shaw was an agent, servant, and/or employee of SHP at the Navarro County Jail, and was acting within the course and scope of his authority as such agent, servant, and/or employee.

101.    As a result of Defendants Shaw's negligent acts and/or omissions, Defendant SHP is vicariously liable for his actions.

## VII.
## DAMAGES

102.    As a direct and proximate result of the above described acts and omissions of Defendants, Plaintiffs, and those interests that Plaintiffs legally represent, have suffered serious damages.  Accordingly, Plaintiffs seek to recover all actual, compensatory, and exemplary damages which have resulted from Defendants' above described conduct.  These damages include, but are not necessarily limited to, the following:

    a)  Irene Rodriguez's physical suffering, both past and future;

    b)  Irene Rodriguez's mental pain and anguish, both past and future;

    c)  All reasonable and necessary medical expenses of Irene Rodriguez A.R., and B.R. that were caused in the past, or will in the future be incurred, due to the above described negligence of Defendants;

    d)  A.R.'s physical suffering, both past and future;

    e)  A.R.'s mental pain and anguish arising from the debilitating physical conditions she suffers as a result of Defendants' negligent conduct, described herein;

    f)  All reasonable and necessary medical expenses, both past and future, associated with the medical treatment of A.R. for conditions that resulted from Defendants' negligent conduct, described herein;

    g)  B.R.'s physical suffering, both past and future;

    h)  B.R.'s mental pain and anguish arising from the debilitating physical conditions he suffers as a result of Defendants' negligent conduct, described herein;

    i)  All reasonable and necessary medical expenses, both past and future, associated with the medical treatment of B.R. for conditions that resulted from Defendants' negligent conduct, described herein;

    j)  All economic costs incurred by Irene Rodriguez, both past and future, in caring for A.R. and B.R. related to conditions caused by Defendants' negligent conduct, described herein;

k)  All economic costs incurred by A.R. and B.R., both past and future, in caring for themselves related to conditions caused by Defendants' negligent conduct, described herein;

l)  Punitive damages against all Defendants except Navarro County;

m) Attorney's fees under 42 U.S.C. § 1983; and

n)  Pre- and post-judgment interest in accordance with Texas law.

## VIII.
## JURY DEMAND

103.  Plaintiff demands a trial by jury.

## IX.
## PRAYER

Plaintiff Irene Rodriguez requests that Defendants Navarro County; Southern Health Partners, Inc.; Linda Hullett; and Dr. Grady Shaw be summoned to appear and answer and that upon final trial or hearing, a judgment be entered in favor of Plaintiffs and against the Defendants for:

a)  Compensatory and actual damages in an amount deemed sufficient by the trier of fact;

b)  Exemplary damages;

c)  Reasonable and necessary attorneys' fees under 42 U.S.C. § 1988;

d)  Costs of court;

e)  Pre-judgment and post-judgment interest at the highest rate permitted by law; and

f)  All such other and further relief, at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,


By:   /s/ Don Tittle

Don Tittle
State Bar # 20080200
don@dontittlelaw.com
Roger Topham
State Bar # 24100557
roger@dontittlelaw.com
LAW OFFICES OF DON TITTLE
6301 Gaston Avenue, Suite 440
Dallas, Texas  75214
214/522-8400
214/389-1002- FAX


## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of March, 2020, I electronically submitted the foregoing document using the electronic case filing system of the court, and that a true and correct copy has been served upon the following counsel of record, by electronic service via the Court's CM/ECF system:

**Frank Alvarez**
State Bar No. 00796122
frank.alvarez@qpwblaw.com
**Jo Beth Drake**
State Bar No. 24045942
jobeth.drake@qpwblaw.com
QUINTAIROS, PRIETO, WOOD & BOYER, PA.
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
(214) 754-8755
*Attorneys for Defendant
Southern Health Partners, Inc.*

**Robert S. Davis**
State Bar No. 05544200
rsd@flowersdavis.com
FLOWERS DAVIS, P.L.L.C.
1021 ESE Loop 323, Suite 200
Tyler, Texas 75701
(903) 534-8063
*Attorney for Defendant Navarro County*


/s/ Don Tittle

Don Tittle