IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE RODRIGUEZ, individually and as parent and legal guardian of A.R. and B.R., | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-CV-0045-D |
| VS. | § | |
| | § | |
| SOUTHERN HEALTH PARTNERS, INC., et al., | § § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In the court's prior memorandum opinion and order in this case, it concluded that

plaintiff had failed to state plausible federal-law claims against defendants on which relief

could be granted, dismissed those claims pursuant to Fed. R. Civ. P. 12(b)(6), declined to

reach plaintiff's state-law claims, and granted plaintiff leave to replead. *See Rodriguez v. S.*

*Health Partners, Inc.* ("*Rodriguez I*"), 2020 WL 2928486, at *1 (N.D. Tex. June 3, 2020)

(Fitzwater, J.). Plaintiff has filed a second amended complaint, and, in two motions,

defendants move anew to dismiss.[1] For the reasons that follow, the court grants one motion,

grants in part one motion, dismisses this action with prejudice as to one defendant by Rule

---

[1]Another defendant, Navarro Regional Hospital ("NRH"), is listed as a defendant in the caption and on page 1 of plaintiff's second amended complaint, but is mentioned only one other time: the allegation that plaintiff and her baby twins were transported to NRH. 2d Am. Compl. ¶ 50. NRH has not joined either pending motion to dismiss.

54(b) final judgment, and denies in part one motion as to the other moving defendants.

I

Plaintiff Irene Rodriguez ("Rodriguez"), individually and as parent and legal guardian of A.R. and B.R.,[2] brings this lawsuit on behalf of herself individually and as parent and legal guardian of her prematurely-born twins.  She alleges that defendants Navarro County, Southern Health Partners, Inc., ("SHP"), Grady Shaw, M.D. ("Dr. Shaw"), and Linda Hullett, R.N. ("Hullett") (SHP, Dr. Shaw, and Hullett are sometimes referred to collectively as the "SHP Defendants") failed to provide proper prenatal care to Rodriguez while she was a pretrial detainee at the Navarro County Jail (the "Jail").[3]  Rodriguez brings a federal-law claim under 42 U.S.C. § 1983 against Navarro County and SHP, alleging that they deprived her of her rights and privileges under the Eighth and/or Fourteenth Amendments to the United States Constitution and by other laws of the United States by failing to provide constitutionally adequate medical treatment.  Rodriguez asserts a federal-law claim under § 1983 against Hullett, alleging that she was deliberately indifferent to Rodriguez's serious medical needs.  And Rodriguez brings a state-law negligence claim against the SHP Defendants.

---

[2]Rule 5.2(a)(3) provides that, "[u]nless the court orders otherwise, in an electronic or paper filing with the court that contains . . . the name of an individual known to be a minor . . . a party or nonparty making the filing may include only . . . the minor's initials."

[3]As noted, *see supra* note 1, Rodriguez also sues NRH, but mentions it only in the caption, on page one, and at one other place in her second amended complaint.

In support of her claims, Rodriguez alleges the following.[4]  On December 22, 2017, when she was approximately 25 to 26 weeks pregnant with twins, Rodriguez was arrested and detained at the Jail.  At the time of her arrest, Rodriguez informed Jail personnel, including Hullett, that she was pregnant with twins.  Rodriguez also informed Hullett that she had a previously-scheduled doctor appointment on December 28, 2017.

On December 27, 2017 Rodriguez notified Hullett that she was beginning to show signs of premature labor,[5] and asked to be taken to a hospital.  Instead of being taken to a hospital, Rodriguez was seen at the Jail that day by Dr. Shaw, a general physician contracted by SHP to provide *ad hoc* care.  Dr. Shaw measured Rodriguez's stomach, but he did not otherwise examine her, even though Rodriguez told him that she had recently passed her mucus plug and had experienced some contractions.  Dr. Shaw did, however, note that Rodriguez had an appointment scheduled with her obstetrician the next day, and he left an order that Rodriguez be seen by an obstetrician as soon as possible.  Nevertheless, Hullett did not allow Rodriguez to attend her December 28 appointment.

On December 29, 2017 Hullett examined Rodriguez and confirmed that she was having contractions approximately three minutes apart.  Rodriguez told Hullett again that she

_____

[4]In deciding defendants' Rule 12(b)(6) motions, the court construes Rodriguez's second amended complaint in the light most favorable to her, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in her favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[5]Rodriguez notified Hullett in writing that she had lost her mucus plug, which she maintains usually signals that childbirth is imminent.

needed to go to the hospital or see an obstetrician, but Hullett refused.  Instead, Hullett telephoned Charles Cook, M.D. ("Dr. Cook"), a local obstetrician, that day.  Dr. Cook told Hullett that Rodriguez should be taken to a hospital immediately if she continued to have contractions or other concerns about her pregnancy.  Although Rodriguez continued to have contractions and repeatedly expressed concerns about the likelihood of premature labor, Hullett did not allow Rodriguez to go to the hospital or to be examined by an obstetrician.

On January 2, 2018 a night-shift nurse examined Rodriguez and confirmed that she was having contractions at regular intervals approximately three minutes apart.  The nurse did not allow Rodriguez to see a physician or go to the hospital but instead returned her to her cell.  At the time of this examination, Hullett had not recorded in Rodriguez's medical records Rodriguez's prior contractions or Dr. Cook's instructions.

Each morning between January 2 and 9, 2018, when Hullett brought prenatal vitamins to Rodriguez, she told Hullett that she needed to go to the hospital or see her obstetrician because she was still having contractions and discharging fluid.  Hullett ignored Rodriguez and told her that she was lying.  During this time, Rodriguez also sent Hullett numerous written requests for help, which Hullett ignored.  Frustrated with the lack of response from Hullett, Rodriguez began submitting written requests to the Jail lieutenant, the Jail captain, a judge, her probation officer, and others.

On January 8, 2018 Rodriguez was allowed to speak with the Jail captain.  She explained her symptoms and expressed concerns about going into premature labor.  The Jail captain responded that he would talk to Hullett and default to Hullett's judgment.  Later that

evening, the night-shift nurse informed Rodriguez that the Jail captain had spoken to Hullett but that she had refused to authorize an evaluation by an obstetrician.

On January 9, 2018, at approximately 3:00 a.m., Rodriguez notified the guards on duty that her contractions had become so strong that she needed urgent medical attention. Because no medical staff or Jail personnel with medical training were present at the Jail, the guards on duty called Hullett. Hullett insisted that Rodriguez remain at the Jail. By 4:50 a.m. Rodriguez's contractions were fewer than three minutes apart and increasing in strength, which Rodriguez alleges is a strong indicator of impending childbirth. Nonetheless, Rodriguez was not allowed to go to the hospital or see a physician. By 5:15 a.m. Jail staff informed Hullett that Rodriguez's contractions were just one minute apart, but Hullett still refused to allow Rodriguez to be taken to the hospital.

At approximately 5:30 a.m. Rodriguez began to give birth to A.R., the first of her twins. At this point the Jail staff on duty called Emergency Medical Services ("EMS"). Before EMS arrived, however, A.R. was born and stopped breathing multiple times. A correctional officer attempted to find a nasal aspirator to clear the mucus from A.R.'s airway, but he was unable to find one. EMS eventually arrived and cleared A.R.'s airway, but this was after critical minutes had been lost. Because A.R. required emergency breathing treatment, which Rodriguez alleges is common in preterm births, it was necessary for a second ambulance to be dispatched for Rodriguez, who was giving birth to B.R., so that A.R. could be immediately transported to the hospital in the first ambulance. Rodriguez's second twin, B.R., was delivered in a jail cell at 5:50 a.m. Rodriguez, A.R., and B.R. were then

- 5 -

transported to Navarro Regional Hospital ("NRH").  Later that same day, Rodriguez, A.R., and B.R. were transported to Baylor Scott & White Medical Center in Dallas, where it was noted in Rodriguez's medical records that her pregnancy was complicated by "late limited prenatal care."  2d Am. Compl. ¶ 51.  A.R. and B.R. were later diagnosed with cerebral palsy, brain injuries, renal failure, respiratory failure, and other serious short- and long-term health issues.  Rodriguez alleges that defendants' failure to provide proper prenatal care, including access to a hospital and/or physician when they knew it was very likely that Rodriguez was at a heightened risk of going into premature labor, caused the serious harms to A.R. and B.R.

Rodriguez later filed the instant lawsuit against Navarro County, SHP, Dr. Shaw, Hullett, and NRH.  In her first amended complaint, she alleged claims under § 1983 for unlawful conditions of confinement against Navarro County and SHP, and for deliberate indifference against Dr. Shaw and Hullett.  She also alleged a Texas-law claim for negligence against the SHP Defendants.  The court granted defendants' motions to dismiss Rodriguez's § 1983 claims under Rule 12(b)(6), declined to reach her state-law negligence claim, and granted Rodriguez leave to replead.  *See Rodriguez I*, 2020 WL 2928486, at *1.  Rodriguez then timely filed her second amended complaint.  In separate motions, Navarro County and the SHP Defendants move anew to dismiss under Rule 12(b)(6).  Rodriguez opposes both motions.

- 6 -

II

Under Rule 12(b)(6), the court evaluates the pleadings by "accept[ing] 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). To survive a motion to dismiss, Rodriguez must allege enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusion.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting

- 7 -

*Twombly*, 550 U.S. at 555).

## III

The court first considers Rodriguez's deliberate indifference claim brought under §
1983 against Hullett.[6]

## A

"Section 1983 creates a private right of action for redressing the violation of federal
law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2
(5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)).
"Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that
it designates.  Thus, an underlying constitutional or statutory violation is a predicate to
liability under § 1983." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citations
and internal quotation marks omitted) (quoting *Johnston v. Harris Cnty. Flood Control Dist.*,
869 F.2d 1565, 1573 (5th Cir. 1989)).

Rodriguez bases her § 1983 claim against Hullett on allegations that Hullett engaged
in unconstitutional conduct that, *inter alia*, violated Rodriguez's rights under the Fourteenth
Amendment.[7]  Although the state has an important interest in the incarceration of pretrial
detainees and convicted state prisoners,

---

[6]Unlike her first amended complaint, Rodriguez's second amended complaint does
not include a § 1983 deliberate indifference claim against Dr. Shaw.

[7]Rodriguez also cites the Eighth Amendment, but, as the court will explain, the
Fourteenth Amendment applies since she was a pretrial detainee.

> [t]he State's exercise of its power to hold detainees and prisoners . . . brings with it a responsibility under the U.S. Constitution to tend to essentials of their well-being: "[W]hen the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."

*Hare v. City of Corinth*, 74 F.3d 633, 638-39 (5th Cir. 1996) (en banc) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989)).

Convicted prisoners derive their right to have these basic needs met from the Eighth Amendment's prohibition on cruel and unusual punishment. *Id.* at 639. Pretrial detainees like Rodriguez, on the other hand, having not been adjudged guilty of any crime and therefore not subject to any punishment, derive their protections from the due process guarantees of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). These protections are said to be "at least as great as . . . [those] available to a convicted prisoner." *Hare*, 74 F.3d at 639 (citation omitted). Therefore, because Rodriguez was a pretrial detainee, the court must decide whether she has plausibly pleaded that Hullett violated her Fourteenth Amendment due process rights.

The applicable standard for making this determination depends on whether the constitutional challenge is based on a "condition of confinement" or an "episodic act or omission." *Flores v. County of Hardeman*, 124 F.3d 736, 738 (5th Cir. 1997) (citing *Hare*, 74 F.3d at 644). Where the claim is based on a condition of confinement, "the constitutional challenge is to the 'general conditions, practices, rules, or restrictions of pretrial

confinement.'" *Palo ex rel. Estate of Palo v. Dallas County*, 2007 WL 2140590, at *2 (N.D. Tex. July 26, 2007) (Fitzwater, J.) (quoting *Hare*, 74 F.3d at 644). By contrast, where the claim is based on an episodic act or omission, "the complained-of harm is a particular act or omission of one or more officials, and the case focuses on 'whether [the] official breached his constitutional duty to tend to the basic human needs of persons in his charge.'" *Id.* (quoting *Hare*, 74 F.3d at 645).

Although Rodriguez alleges in the § 1983 claim against Navarro County and SHP that she is "plead[ing] her case under the alternative theories of conditions of confinement and episodic acts or omissions," 2d Am. Compl. ¶ 113, she does not similarly allege these alternative theories in the context of her § 1983 claim against Hullett. She asserts only an episodic act or omission, i.e., the failure of Hullett "to provide proper medical care to [Rodriguez]," which she maintains "constitutes deliberate indifference to her serious medical needs." *Id.* ¶ 125.

B

As noted, an episodic act or omission claim is distinct from a condition of confinement claim because it involves a particular act or omission of one or more officials, whose intent to cause harm is not presumed. *See Hare*, 74 F.3d at 645. To state an episodic act or omission claim against Hullett, Rodriguez must plausibly plead that Hullett violated Rodriguez's right to medical treatment with "subjective deliberate indifference." *Johnson v. Johnson County*, 2006 WL 1722570, at *3 (N.D. Tex. June 21, 2006) (Fitzwater, J.) (citing *Flores*, 124 F.3d at 738). "A prison official acts with deliberate indifference 'only if [(A)]

- 10 -

he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (alteration in original) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)); *see also Hyatt v. Thomas*, 843 F.3d 172, 179 (5th Cir. 2016). Subjective deliberate indifference "cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (citing *Hare*, 74 F.3d at 645, 649). Rather, "[d]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the pretrial detainee], ignored h[er] complaints, intentionally treated h[er] incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

C

In *Rodriguez I* the court held that "[n]either Rodriguez's disagreement with Hullett's decision to keep her under observation at the Jail rather than to immediately transport her to a hospital, nor the fact that this decision ultimately proved insufficient to avoid premature childbirth at the Jail, [was] sufficient to support a constitutional claim of deliberate indifference." *Rodriguez I*, 2020 WL 2928486, at \*14 (citation omitted). The court thus dismissed Rodriguez's § 1983 claim against Hullett.

In her second amended complaint, however, Rodriguez alleges, *inter alia*, that Hullett disregarded two doctors' orders related to Rodriguez's medical care. Rodriguez asserts that

- 11 -

Dr. Shaw informed Hullett that Rodriguez needed to "be seen by an obstetrician as soon as possible," and that "Dr. Cook told Hullett that [Rodriguez] should be taken to a hospital immediately if she continued to have contractions or other concerns about her pregnancy." 2d Am. Compl. ¶¶ 23, 30.  Rodriguez alleges that Hullett defied these doctors' orders by refusing to allow Rodriguez to be seen by an obstetrician or to be taken to a hospital even though Rodriguez continued to experience intensifying contractions and expressed concerns about preterm labor.  The SHP Defendants maintain that the allegations of Rodriguez's second amended complaint are still insufficient.[8]  The court disagrees.

The court concludes that Rodriguez's second amended complaint plausibly pleads an episodic act or omission claim against Hullett under § 1983 on the basis that Hullett acted with subjective deliberate indifference.  The Fifth Circuit "ha[s] found evidence of deliberate indifference where jail nurses knew of the inmate's medical needs but ignored doctors' explicit treatment orders to meet those needs."  *Estate of Henson v. Krajca*, 440 Fed. Appx. 341, 344 (5th Cir. 2011) (citing *Lawson v. Dallas County*, 286 F.3d 257, 263 (5th Cir. 2002) (upholding finding of deliberate indifference when nurses did not follow doctors' medical-care instructions for inmate)); *see also Criollo v. Milton*, 414 Fed. Appx. 719, 721 (5th Cir.

---

[8]The SHP Defendants also assert that Rodriguez's § 1983 claim against Hullett is subject to dismissal because she is a private actor and therefore not subject to liability under § 1983.  But the court has already rejected this argument, concluding in *Rodriguez I* that, because "private entities providing medical services to inmates in a correctional facility perform a traditional state function [they] therefore can be considered state actors subject to liability under § 1983 with respect to those services."  *Rodriguez I*, 2020 WL 2928486, at *10 (quoting *Doe v. Steward Health Care Sys. LLC*, 2018 WL 4233816, at *7 (S.D. Tex. July 31, 2018)).

2011) (per curiam) (holding that plaintiff alleged sufficient facts to support deliberate indifference when nurse denied inmate prescribed medical treatment); *cf. Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999) (granting defendant summary judgment because a *doctor* who had a "difference in opinion as to the appropriate method of treatment" with another doctor did not act with deliberate indifference).  Because Rodriguez has plausibly alleged that Hullett, a nurse, defied physicians' orders to have Rodriguez seen by an obstetrician or to be taken to a hospital if her contractions continued, she has plausibly pleaded that Hullett acted with subjective deliberate indifference rather than with mere negligence.  The court therefore denies the SHP Defendants' motion to dismiss Rodriguez's § 1983-based deliberate indifference claim against Hullett.

## IV

The court next considers together Navarro County's and the SHP Defendants' motions to dismiss Rodriguez's § 1983 claim against Navarro County and SHP.[9]  The court must decide whether Rodriguez has plausibly pleaded the essential elements for municipal liability.

---

[9]As the court explained in *Rodriguez I*, "[a]lthough SHP is a private corporation, '[t]he standards applicable to determining liability under § 1983 against a municipal corporation are applicable to determining the liability of a private corporation performing a government function.'"  *Rodriguez I*, 2020 WL 2928486, at *3 n.4 (quoting *Olivas v. Corr. Corp. of Am.*, 408 F.Supp.2d 251, 254-55 (N.D. Tex. 2006) (Bleil, J.), *aff'd*, 215 Fed. Appx. 332 (5th Cir. 2007)).

A

A municipality is a "person" subject to suit under § 1983 under certain circumstances. *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690 (1978). Although a municipality cannot be held liable on a theory of *respondeat superior*, *id.* at 691, it can be held liable if a deprivation of a constitutional right is inflicted pursuant to an official policy or custom, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001). Municipal liability requires proof of three elements: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

The first element requires that Rodriguez adequately plead an official policy or custom. "[A] policy can be shown through evidence of an actual policy, regulation, or decision that is officially adopted and promulgated by lawmakers or others with policymaking authority." *Id.* at 542 (citing *Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003)). Although a "single decision by a [policymaker] may, under certain circumstances, constitute a policy for which a municipality may be liable[,] . . . this 'single incident exception' is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker." *Id.* (citations, brackets, and some internal quotation marks omitted). A custom is "a persistent, widespread practice of City officials or employees, which, although not authorized by officially adopted and promulgated policy, is

- 14 -

so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).

To satisfy the second element, Rodriguez must adequately plead the identity of a policymaker with "final policymaking authority." *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). "A 'policymaker' must be one who takes the place of the governing body in a designated area of city administration." *Webster*, 735 F.2d at 841 (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984) (en banc)). "City policymakers not only govern conduct; they decide the goals for a particular city function and devise the means of achieving those goals. . . . [T]hey are not supervised except as to the totality of their performance." *Bennett*, 728 F.2d at 769. "[The court's] analysis must also take into account the difference between final decisionmaking authority and final policymaking authority, a distinction that this circuit recognized as fundamental[.] . . . [D]iscretion to exercise a particular function does not necessarily entail final policymaking authority over that function." *Bolton v. City of Dallas*, 541 F.3d 545, 548-49 (5th Cir. 2008) (per curiam) (citations omitted); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993) (explaining distinction between final policymaking authority and mere decisionmaking).

The third element requires that Rodriguez adequately plead that the municipal policy or custom was the "moving force" of the constitutional deprivation, which requires a "high threshold of proof." *Piotrowski*, 237 F.3d at 580 (citing *Monell*, 436 U.S. at 694). The

"plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Valle*, 613 F.3d at 542 (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  Rodriguez therefore "must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Id.* (quoting *Brown*, 520 U.S. at 411); *see also Piotrowski*, 237 F.3d at 579 ("[E]ven a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result." (quoting *Brown*, 520 U.S. at 407)).  Simple or even heightened negligence, however, is insufficient to meet the deliberate indifference requirement.  *Piotrowski*, 237 F.3d at 579 (quoting *Brown*, 520 U.S. at 407).

B

In *Rodriguez I* the court held that Rodriguez had pleaded one policy that Navarro County could be charged with as a policymaker, but that she had failed to plausibly allege that the policy was the moving force behind the constitutional deprivation. *Rodriguez I*, 2020 WL 2928486, at *9 (citations omitted).  The court therefore dismissed Rodriguez's municipal-liability claims against Navarro County and SHP.

In response to *Rodriguez I*, Rodriguez has repleaded her § 1983 claim against Navarro County and SHP, and they both move anew to dismiss on largely the same grounds that the court considered in *Rodriguez I*.  Navarro County argues that Rodriguez has failed to plausibly allege a governmental policy or custom and that, to the extent Rodriguez has

alleged such a policy, the pleadings do not allow an inference that the policy was the moving force behind the alleged constitutional deprivation.  The SHP Defendants maintain, *inter alia*, that Rodriguez has failed to plead a governmental policy or custom; "set forth SHP . . . as [an] official policy maker[] for the jail"; or plead the minimum culpable mental state.  SHP Ds. Br. at 8.[10]

Rodriguez responds that she has sufficiently pleaded all three requirements for municipal liability against both Navarro County and SHP.  Her second amended complaint includes the same three alleged policies addressed in *Rodriguez I*: (1) not allowing inmates to seek treatment from a hospital or specialist, even when medical staff knew it was necessary and that the inmate was likely to suffer an emergency when there was no staff on site trained to recognize or treat it; (2) not providing any training to Jail staff regarding the recognition of medical emergencies or how to properly respond to them; and (3) not having any medical staff on site for approximately nine hours of every day.  Rodriguez also relies on a new assertion: that Navarro County and SHP intentionally abandoned a policy that Navarro County originally deemed necessary—having a licensed physician on call for emergencies at all times.  Rodriguez alleges that Navarro County and SHP are both policymakers regarding medical services at the Jail.  She also maintains that the four alleged

───────────────

[10]The SHP Defendants also contend that SHP cannot be considered a state actor for purposes of imposing § 1983 liability.  Because the court is dismissing Rodriguez's § 1983-based claims against SHP on other grounds, *see infra* § VII, it does not specifically address the SHP Defendants' motion to dismiss Rodriguez's claims against SHP on the ground that SHP is a private actor.

policies "worked both separately and in unison to cause the twins' premature birth and resulting maladies."  Ps. Br. at 9.

V

The court first considers whether Rodriguez has plausibly pleaded the existence of a policy or custom, as required by *Monell*.

A

"Municipal liability for section 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy."  *Pogue v. City of Dallas*, 2014 WL 3844675, at *3 (N.D. Tex. Aug. 4, 2014) (Boyle, J.) (quoting *Piotrowski*, 237 F.3d at 579).  A plaintiff's allegations regarding the policy or custom cannot be conclusory, and they must contain specific facts showing the existence of such a custom. *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)).  "A single incident unaccompanied by supporting history will likely be an inadequate basis for inferring such a custom or usage unless the actor or actors involved had been given official policy-making authority."  *Renfro v. City of Kaufman*, 27 F.Supp.2d 715, 717 (N.D. Tex. 1998) (Fish, J.) (citing *Worsham v. City of Pasadena*, 881 F.2d 1336, 1339-40 (5th Cir. 1989)).  And "[b]oiler plate allegations of municipal policy, entirely lacking in any factual support that a municipal policy does exist, are insufficient."  *Crow v. Cash Special Util. Dist.*, 2005 WL 1126826, at *2 (N.D. Tex. May 11, 2005) (Sanders, J.) (quoting *Baxter v. Vigo Cnty. Sch. Corp.*, 26 F.3d 728, 736 (7th Cir. 1994)).

B

The court begins with Rodriguez's contention that SHP and Navarro County had a policy of not allowing inmates to seek treatment from a hospital or specialist, even when medical staff knew that it was necessary and that the inmate was likely to suffer an emergency when there was no staff on site trained to recognize or treat it.

In *Rodriguez I* the court held that Rodriguez's "conclusory allegations [were] insufficient to support a reasonable inference that either SHP or Navarro County actually had an official policy or custom of not allowing inmates to seek hospital treatment unless there was a medical emergency." *Rodriguez I*, 2020 WL 2928486, at *5.  In her second amended complaint, Rodriguez has not added any factual allegations regarding this alleged policy. She argues nonetheless that the Jail's repeated refusal to provide her with outside care is sufficient to establish a custom that represents municipal policy.  The court disagrees.

Contrary to Rodriguez's assertion, to establish a custom "a plaintiff must demonstrate 'a pattern of abuses that transcends the error made in a single case.'" *Peterson v. City of Fort Worth*, 588 F.3d 838, 850-51 (5th Cir. 2009) (quoting *Piotrowski*, 237 F.3d at 582).  Because Rodriguez has not alleged any other instances of the Jail's denying emergency services, she has failed to plausibly plead that SHP and Navarro County had a policy or custom of not allowing inmates to seek treatment from a hospital or specialist, even when medical staff knew it was necessary and that the inmate was likely to suffer an emergency when there was no staff on site trained to recognize or treat it.

- 19 -

C

The court considers next Rodriguez's claim that Navarro County and SHP had a policy of not providing any training to Jail staff regarding the recognition of medical emergencies or how to properly respond to them.

1

In *Rodriguez I* the court held that the allegation that "non-medical correctional staff had no medical or emergency training whatsoever" was conclusory. *Rodriguez I*, 2020 WL 2928486, at *5 (citation omitted). The court explained that Rodriguez had failed to allege "an actual policy, regulation, or officially-adopted decision regarding the medical or emergency training of non-medical correctional staff." *Id.* at *6 (citing *Valle*, 613 F.3d at 542). Nor had she pleaded, other than in conclusory terms, that "the Jail's failure to have on duty non-medical staff with medical or emergency training was more than an isolated occurrence." *Id.* (citing *Renfro*, 27 F.Supp.2d at 717).

In her second amended complaint, Rodriguez alleges:

> [t]his lack of training for non-medical personnel was official Jail policy. In its Agreement with Navarro County, SHP expressly undertakes to provide ALL of the medical care at the Jail. No related responsibility, such as to correctional officers working for the County, was reserved by the County. Therefore, the County and SHP agreed that correctional officers would not be participating in the provision of medical care, including any training to recognize or respond to emergencies.

2d Am. Compl. ¶ 82. Navarro County maintains that these allegations are still conclusory. The court agrees.

- 20 -

As in *Rodriguez I*, the court holds that "[t]o the extent Rodriguez bases her § 1983 claim on Navarro County's failure to staff the Jail at all times with correctional staff who had medical or emergency training, Rodriguez has failed to plausibly allege a policy or custom." *Rodriguez I*, 2020 WL 2928486, at *6. Rodriguez alleges that SHP contractually agreed to provide all medical care at the Jail and that the contract between Navarro County and SHP did not mention medical training for Navarro County's correctional officers. But these allegations still do not point to an "actual policy, regulation, or officially-adopted decision regarding the medical or emergency training of non-medical correctional staff." *See id.* (citing *Valle*, 613 F.3d at 542). Rodriguez's assertion that Navarro County and SHP's contract reflects an agreement that correctional officers would not participate in any training to recognize or respond to emergencies is a "legal conclusion couched as a factual allegation." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rodriguez has also failed to allege facts sufficient to permit the court to infer the existence of an official custom that fairly represented municipal policy. Although she contends that the guards on duty the night she went into labor were not adequately trained in how to respond to a medical emergency, she has not alleged, other than in conclusory terms, another instance in which the Jail operated without any staff on duty who were trained in responding to a medical emergency. The court is therefore unable to draw a reasonable inference that there was an official policy or custom not to train Jail staff on how to recognize and respond to medical emergencies.

- 21 -

2

In *Rodriguez I* the court noted that it was unclear whether Rodriguez intended to plead a failure-to-train claim, which is a separate theory of municipal liability. *See Rodriguez I*, 2020 WL 2928486, at *6 n.6 (citing *Arevalo v. City of Farmers Branch*, 2017 WL 1153230, at *11 (N.D. Tex. Mar. 28, 2017) (Fitzwater, J.)). Rodriguez has now clarified that while she "does not concede, as a matter of law, that the facts alleged do not support a distinct failure-to-train-or-supervise claim," she "believes this is more appropriately viewed as part of an overarching unconstitutional policy." Ps. Br. at 13 n.58. To plead a plausible failure-to-train claim, Rodriguez must allege facts that enable the court to draw the reasonable inference that "(1) the training procedures were inadequate; (2) the city's policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [Rodriguez's] injury." *Arevalo*, 2017 WL 1153230, at *11 (quoting *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011)). But the second amended complaint contains no factual allegations regarding the training procedures for non-medical Jail personnel, only conclusory statements such as: "non-medical correctional staff had no medical or emergency training whatsoever." 2d Am. Compl. ¶ 81. Accordingly, the court concludes that Rodriguez has failed to plead municipal liability based on a distinct failure-to-train claim.

D

Rodriguez also alleges that Navarro County and SHP had an official policy of not having any medical staff on site for approximately nine hours of every day. In *Rodriguez I* the court held that Rodriguez had adequately pleaded the existence of an "official policy, as

reflected in [Navarro County's] contract with SHP, that medical staff would not be present at the Jail between the hours of 10:00 p.m. and 7:00 a.m." *Rodriguez I*, 2020 WL 2928486, at *6.  The court relied on Rodriguez's allegation that Navarro County's contract with SHP "specified exactly how many and what kind of medical staff were to be employed at the Jail, and at what times" to conclude that Rodriguez had "plausibly allege[d] an official policy." *Id.* (citations omitted).

Defendants do not argue for a different result in their present motions to dismiss, nor does the court discern any reason to reach a different conclusion based on Rodriguez's second amended complaint.  Accordingly, the court concludes that, to the extent Rodriguez bases her § 1983 claim against Navarro County and SHP on the alleged policy that no medical staff would be present at the Jail between the hours of 10:00 p.m. and 7:00 a.m., she has satisfied the first element of municipal liability under *Monell*.

E

The court now turns to Rodriguez's new allegation that defendants agreed to abandon a policy that Navarro County originally deemed necessary—having a licensed physician on call at all times for emergencies.

The failure to adopt a policy can create § 1983 liability when the omission reflects an "intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992) (citing *City of Canton v. Harris*, 489 U.S. 378, 387 (1989)).  "The Supreme Court has held that municipal failure to adopt a policy does not constitute such an intentional choice unless it can be said to have been 'deliberately

- 23 -

indifferent.'"  *Id.* (citing *City of Canton*, 489 U.S. at 390).  "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights."  *Id.* (citing *City of Canton*, 489 U.S. at 390).

In her second amended complaint, Rodriguez alleges that Navarro County sent a request for proposals ("RFP") to potential medical-care providers specifying that the "Provider shall identify a responsible physician" who "shall be on call to the nurse seven days per week, twenty-four hours per day for emergency situations"; that the final contract between Navarro County and SHP did not require a physician to be on call at all times; and that, as a result, the Jail did not have a physician on call at all times.  2d Am. Compl. ¶ 89 (internal quotation marks omitted).  Rodriguez asserts that defendants' failure to ultimately adopt this policy in their contract constitutes deliberate indifference because they knew that there would be no medical staff on site overnight.

The court concludes that Rodriguez has plausibly pleaded that Navarro County and SHP made an intentional policy choice not to have a physician on call at all times. Rodriguez's allegation that Navarro County initially requested that a physician be on call at all times permits the court to reasonably infer that the contract's eventual exclusion of the on-call-physician requirement was an "intentional choice, not merely an unintentionally negligent oversight."  *See Rhyne*, 973 F.2d at 392 (citing *City of Canton*, 489 U.S. at 387). Rodriguez has also plausibly alleged that defendants' failure to adopt this policy constitutes deliberate indifference.  Because the contract between Navarro County and SHP specified

an exact staffing plan, the court can reasonably infer that, when defendants decided not to require a physician to be on call at all times, they knew there would not be any medical staff on site overnight.  Regardless whether it was actually obvious that the likely consequences of this decision would be the deprivation of adequate medical care, Rodriguez has plausibly pleaded for Rule 12(b)(6) purposes that it was.  Accordingly, to the extent Rodriguez bases her § 1983 claim against Navarro County and SHP on their failure to adopt a policy to have a physician on call at all times, she has satisfied the first element of municipal liability under *Monell*.

## VI

The court now turns to the question whether Rodriguez has plausibly pleaded the second element of *Monell* liability: that Navarro County and/or SHP had final policymaking authority with regard to the policies at issue, i.e., the policies that the court has determined are plausibly pleaded.

## A

The identity of the final policymaker is a question of state and local law.  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 (1988).  "[A] policymaker is one who takes the place of the governing body in a designated area of city administration," *Pinedo v. City of Dallas*, 2015 WL 221085, at *4 (N.D. Tex. Jan. 15, 2015) (Fitzwater, J.) (citing *Webster*, 735 F.2d at 841); governs not only conduct, but decides the goals for a particular city function, and devises the means of achieving those goals, *Webster*, 735 F.2d at 841 (quoting *Bennett*, 728 F.2d at 769); and is not supervised except as to the totality of his performance, *id.* (quoting

- 25 -

*Bennett*, 728 F.2d at 769).  In the context of § 1983 claims, courts must be sensitive to the distinction between decisionmakers and final policymakers.

> Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered.  The fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (internal citations and footnotes omitted); *see also Jett*, 7 F.3d at 1246 ("In *Pembaur* and *Praprotnik* the Court carefully distinguished between those having mere *decisionmaking* authority and those having *policymaking* authority.").

Policymaking authority requires more than a showing of mere discretion or decisionmaking authority on the part of the official.  *Webster*, 735 F.2d at 841 (quoting *Bennett*, 728 F.2d at 769).  If the governing body chooses to delegate policymaking authority to a city official, it does so in either of two ways.  *Bennett*, 728 F.2d at 769.  It can delegate policymaking power by an express statement, job description, or other formal action.  *Id.*; *Swann v. City of Dallas*, 922 F. Supp. 1184, 1204 (N.D. Tex. 1996) (Boyle, J.), *aff'd*, 131 F.3d 140 (5th Cir. 1997) (unpublished table decision).  "Or it may, by its conduct or practice, encourage or acknowledge the agent in a policymaking role."  *Bennett*, 728 F.2d at 769.  In essence,

- 26 -

> [t]he governing body must expressly or impliedly acknowledge that the agent
> [] acts in lieu of the governing body to set goals and to structure and design the
> area of the delegated responsibility, subject only to the power of the governing
> body to control finances and to discharge or curtail the authority of the agent.

*Id.* Whether an official has been delegated final policymaking authority is a question of law for the judge, not a question of fact for the jury. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).

B

In *Rodriguez I* the court held that Rodriguez adequately pleaded that the Navarro County Sheriff was an official policymaker who had actual or constructive knowledge of the policy that no medical staff would be present between the hours of 10:00 p.m. and 7:00 a.m. *Rodriguez I*, 2020 WL 2928486, at \*6. The court explained that, "in Texas, [t]he sheriff is without question the county's final policymaker in the area of law enforcement." *Id.* at \*6 n.7 (internal quotation marks omitted) (quoting *Jackson v. Ford*, 544 Fed. Appx. 268, 272 (5th Cir. 2013) (per curiam)). And by asserting that the Sheriff had approved the contract with SHP, Rodriguez had plausibly alleged that the Navarro County Sheriff was a policymaker who had actual or constructive knowledge of the policy. *Id.* at \*6.

But the court dismissed Rodriguez's § 1983 claim against SHP because she had not plausibly alleged that SHP was a policymaker with respect to that policy. *Id.* at \*8. The court explained that Rodriguez had not pleaded facts that enabled the court to infer that Navarro County had delegated policymaking authority to SHP with respect to the working hours of medical staff at the Jail. *Id.*

- 27 -

In her second amended complaint, Rodriguez alleges that both Navarro County and SHP should be held liable under § 1983 for the policies at issue.  She contends that Navarro County "delegated policymaking authority to SHP" regarding medical care at the Jail but that Navarro County "cannot absolve itself" of liability because it has a "non-delegable duty under Texas law to provide medical care to its inmates."  2d Am. Compl. ¶ 76.  Alternatively, Rodriguez alleges that SHP was the sole policymaker regarding medical services at the Jail. And as a further alternative, Rodriguez asserts that the Navarro County Sheriff retained policymaking authority over medical services at the Jail.[11]

C

The court first considers Rodriguez's allegation that Navarro County delegated policymaking authority to SHP for the policies at issue.  Rodriguez points to two provisions in the RFP that Navarro County sent to potential medical-care providers as an express delegation of policymaking authority.  The RFP allegedly states that (1) a mandatory requirement for all proposals is a "statement that the policies and procedures for the medical program will be developed by the Proposer," and (2) the "Policies and Procedures of the Provider relating to medical care are to be established and implemented solely by the Provider."  2d Am. Compl. ¶ 75.  SHP argues that this allegation falls short of identifying

---

[11]Rodriguez also alleges in the alternative that the Navarro County Commissioners Court may be the policymaker with respect to Jail policy.  But as the court already explained in *Rodriguez I*, in Texas it is the sheriff, not the county commissioners court, that has final policymaking authority in the area of law enforcement.  *See Rodriguez I*, 2020 WL 2928486, at *6 n.7 (quoting *Jackson*, 544 Fed. Appx. at 272).

what specific policy was created or implemented by SHP pursuant to an actual contract.

The court concludes that Rodriguez has plausibly pleaded that Navarro County expressly delegated policymaking authority to SHP regarding medical-care policies at the Jail. Unlike in the first amended complaint, Rodriguez no longer alleges that SHP's mere participation in the contract negotiations vested it with official policymaker authority. *See Rodriguez I*, 2020 WL 2928486, at *8. Instead, Rodriguez points to two provisions in the RFP that permit the court to reasonably infer that Navarro County "acknowledge[d] that [SHP] acts in lieu of" Navarro County "to structure and design" the medical-care policies at the Jail. *See Bennett*, 728 F.2d at 769. Because the two policies at issue involve medical care at the Jail and arise from Navarro County and SHP's contract, the court concludes that Rodriguez has satisfied the second *Monell* element regarding SHP's liability for those policies.[12]

### D

The court considers next whether Rodriguez has adequately pleaded the second *Monell* element with regard to Navarro County's alleged § 1983 liability. Rodriguez contends that "even though [Navarro County] has delegated policymaking authority to SHP,

---

[12]SHP also maintains that Rodriguez has failed to identify a specific policymaker at SHP. But "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016). Because Rodriguez has adequately alleged that the two policies at issue were promulgated by SHP, she has satisfied her pleading obligation as to this element.

the County cannot absolve itself" of liability because it has a "non-delegable duty under Texas law to provide medical care to its inmates."  2d Am. Compl. ¶ 76.  Alternatively, Rodriguez maintains that the Navarro County Sheriff retained policymaking authority over medical services at the Jail.

1

As a preliminary matter, the court notes that Navarro County and SHP can both be held liable under § 1983 for the policies at issue.  The Supreme Court has stated that "there will be cases in which policymaking responsibility is shared among more than one official or body."  *Praprotnik*, 485 U.S. at 126.  The Court has also explained that if "a city's lawful policymakers could insulate the government from liability simply by delegating their policymaking authority to others, § 1983 could not serve its intended purpose."  *Id.*; *see also King ex rel. Estate of King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir. 2012) ("The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services."); *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705 (11th Cir. 1985) ("Although [a private medical-care provider] has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies or customs of the [provider].  In that sense, the county's duty is non-delegable."). Accordingly, if the court were to ultimately conclude that Navarro County *did* delegate policymaking authority to SHP, such a holding would not of itself preclude Navarro County from also being held liable under § 1983.  In that sense, Rodriguez has adequately pleaded the second *Monell* element with regard to both SHP and Navarro County for the policies at

- 30 -

issue.

2

Alternatively, even if the court were to hold that Navarro County did not delegate policymaking authority to SHP regarding medical care at the Jail, Rodriguez has still plausibly pleaded that the Navarro County Sheriff was the official policymaker. As the court explained in *Rodriguez I*, "in Texas, [t]he sheriff is without question the county's final policymaker in the area of law enforcement." *Rodriguez I*, 2020 WL 2928486, at *6 n.7 (internal quotation marks omitted) (quoting *Jackson*, 544 Fed. Appx. at 272). In her second amended complaint, Rodriguez alleges that the Navarro County Sheriff approved the contract with SHP regarding medical care policies at the Jail and was fully aware of its contents. And because the policies at issue arise out of the contract between Navarro County and SHP, Rodriguez has plausibly pleaded in the alternative that the Navarro County Sheriff is a policymaker who can be charged with actual or constructive knowledge. Accordingly, the court concludes that Rodriguez has adequately pleaded the second *Monell* element with regard to Navarro County's liability for the policies at issue.

VII

The court now turns to the third *Monell* element. In *Rodriguez I* the court held that Rodriguez "failed to plausibly allege that [the] policy of not having medical staff on site between 10:00 p.m. and 7:00 a.m. was the moving force behind her alleged constitutional deprivation." *Rodriguez I*, 2020 WL 2928486, at *8. The court explained that the first amended complaint did not allege that Rodriguez would have been transported to the hospital

- 31 -

any sooner if medical staff had been present at the Jail.  *Id.* at *9.  The first amended
complaint also failed to allege that the presence of medical staff would have prevented
Rodriguez's twins from being born prematurely or their inability to breath after birth.  *Id.*

In her second amended complaint, Rodriguez alleges that "[h]ad a reasonable nurse
or doctor been physically present, she would have personally observed Plaintiff's physical
condition, and more likely than not would have called an ambulance immediately."  2d Am.
Compl. ¶ 95.  Rodriguez asserts that it was necessary for Hullett to rely on a correctional
officer's communicated observations.  Rodriguez also alleges that an on-call physician
"would have been called, and would have gotten [Rodriguez] transported to a hospital when
she first complained of having more intense contractions at around 3:00 a.m.," 2d Am.
Compl. ¶ 96, preventing the twins from being born inside the Jail.  Defendants posit that the
allegations in the second amended complaint are speculative and still fail to plead a causal
link between the alleged policies and the alleged constitutional deprivation.

The requirement that a policy be the moving force behind a violation is a "high
threshold."  *Piotrowski*, 237 F.3d at 580 (quoting *Monell*, 436 U.S. at 694).  For a policy to
be the moving force requires "more than a mere 'but for' coupling between cause and effect";
it must be "the actual cause of the constitutional violation."  *Valle*, 613 F.3d at 546 (quoting
*Thompson v. Connick*, 578 F.3d 293, 300 (5th Cir. 2009) (en banc) (per curiam)).  This
requirement "must not be diluted" because when a court "fails to adhere to [the] rigorous
requirements of . . . causation, municipal liability collapses into respondeat superior
liability."  *Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (internal quotation marks

omitted) (quoting *Brown*, 520 U.S. at 415).

Rodriguez alleges that her constitutional rights were violated because A.R. and B.R. were born in the Jail instead of a hospital.  But she has not plausibly alleged that it was the absence of medical staff at the Jail or the lack of a physician on call that caused her alleged constitutional injury rather than Hullett's decision to keep her at the Jail.  Rodriguez asserts that the guards on duty the night she went into labor informed Hullett (a medical professional) by phone about the increasing strength and frequency of Rodriguez's contractions, but that Hullett "refused to authorize transport to the hospital."  2d Am. Compl. ¶¶ 40-45.  In other words, Rodriguez alleges that the reason she was not taken to the hospital was that Hullett decided that Rodriguez should remain at the Jail.

Rodriguez's assertion that defendants' policies were the moving force behind the alleged constitutional harm falls short of the "high threshold" of causation, *Piotrowski*, 237 F.3d at 580, required to avoid "municipal liability collaps[ing] into respondeat superior liability," *Snyder*, 142 F.3d at 796 (quoting *Brown*, 520 U.S. at 415).  The second amended complaint, unlike the first, does allege that Rodriguez would have been transported to the hospital sooner if a "*reasonable* nurse or doctor [had] been physically present at the Jail" or if a physician had been on call.  2d Am. Compl. ¶¶ 95-96 (emphasis added).  But in addition to being a speculative and conclusory assertion, this allegation amounts simply to another way of asserting that the result would have been different had some *other* medical professional—i.e., not Hullett—made the decision.  Accordingly, Rodriguez has not plausibly alleged that a municipal *policy*, rather than the individual *decision* of a municipal

employee, was the "actual cause of the constitutional violation." *Valle*, 613 F.3d at 546 (citing *Thompson*, 578 F.3d at 300). Nor has she plausibly alleged that Hullett acted pursuant to an official policy. *See Piotrowksi*, 237 F.3d at 578 ("[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability."). The court therefore concludes that Rodriguez has not plausibly pleaded that the Jail's policies were the "moving force" behind the alleged violation.[13] *See id.*

Accordingly, because Rodriguez has failed to plausibly plead all of the *Monell* elements with respect to the alleged policies that she asserts in support of her § 1983 claim against Navarro County and SHP, the court grants defendants' motions to dismiss this claim with prejudice. And because this is the only claim asserted against Navarro County, the court dismisses Rodriguez's action against it by Rule 54(b) final judgment entered today.

VIII

Finally, the court considers whether the statute of limitations bars Rodriguez's Texas-law negligence claim against Dr. Shaw.

"A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

---

[13]Because the court concludes that Rodriguez has failed to plausibly allege that the Jail's policies were the moving force behind her constitutional deprivation, it need not address the SHP Defendants' argument that Rodriguez has failed to plausibly plead the minimum culpable mental state against SHP, another component of the third *Monell* element.

- 34 -

The SHP Defendants contend that the two-year statute of limitations for health-care-liability claims prescribed by Tex. Civ. Prac. & Rem. Code Ann. § 74.251 bars Rodriguez's negligence claim against Dr. Shaw because he examined Rodriguez on December 27, 2017, but Rodriguez did not file her complaint against Dr. Shaw until January 8, 2020 (over two years later). Rodriguez maintains that her claim against Dr. Shaw is not barred because A.R. and B.R. are minors under the age of twelve, citing § 74.251; the statute of limitations was tolled for 75 days when she gave the statutorily-required notice to Dr. Shaw, citing § 74.051(c); and the claim did not accrue until A.R. and B.R. were born, i.e., on January 9, 2018.

The court holds that the statute of limitations does not support dismissal under Rule 12(b)(6) because Rodriguez has pleaded a basis for tolling that would prevent the claim from being barred. *See Jones*, 339 F.3d at 366. In her second amended complaint, Rodriguez alleges that she "has fully complied with the requirements of §§ 74.051-052 of the Texas Civil Practice and Remedies Code by sending the required notice and authorization forms." 2d Am. Compl. ¶ 131. Section 74.051(c) states that "[n]otice given as provided in this chapter shall toll the applicable statute of limitations to and including a period of 75 days following the giving of the notice." Assuming *arguendo* that the two-year statute of limitations of § 74.251 applies and that it began to run on December 27, 2017, Rodriguez would have needed to file suit against Dr. Shaw no later than March 11, 2020 (i.e., two years and seventy-five days after the statute of limitations began to run), assuming she satisfied the notice requirements of §§ 74.051-052. Because Rodriguez filed suit against Dr. Shaw on

January 8, 2020, she has pleaded a basis for tolling that would prevent the claim from being barred.

The SHP Defendants contend that the statute of limitations was not tolled because the notice Rodriguez provided to Dr. Shaw did not comply with the requirements of §§ 74.051-052.  But this is an issue that cannot be resolved via a Rule 12(b)(6) motion to dismiss.  To succeed at the Rule 12(b)(6) stage based on a limitations defense, the defense must "clearly appear[] on the face of the complaint."  *Bush v. United States*, 823 F.2d 909, 910 (5th Cir. 1987) (per curiam) (citing *Kaiser Aluminum's Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982)); *accord Kelly v. Nichamoff*, 868 F.3d 371, 374 (5th Cir. 2017) (quoting *EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA*, 467 F.3d 466, 477 (5th Cir. 2006)).  In the present case, the statute of limitations defense neither clearly appears on the face of the second amended complaint nor is clearly foreclosed by the facts alleged in the second amended complaint.  Instead, the SHP Defendants cite an appendix that Rodriguez filed in response to the SHP Defendants' previous motion to dismiss that allegedly supports their argument that Rodriguez failed to comply with the requirements of §§ 74.051-052.  But in the context of this lawsuit, the court cannot rely on evidence outside of the complaint without converting the SHP Defendants' motion into a motion for summary judgment.  *See, e.g., Sivertson v. Clinton*, 2011 WL 4100958, at *3 n.4 (N.D. Tex. Sept. 14, 2011) (Fitzwater, C.J.).

To ensure that the parties have a fair opportunity to brief the issue under the proper

standard and to present evidence pertinent to the issue,[14] the court in its discretion declines to convert the SHP Defendants' motion to dismiss into a motion for summary judgment. The court denies the SHP Defendants' motion to dismiss Rodriguez's state-law negligence claim against Dr. Shaw without prejudice to their later seeking summary judgment on limitations grounds.

                                          *    *    *

For the reasons explained, the court grants Navarro County's motion to dismiss, grants in part the SHP Defendants' motion to dismiss and dismisses Rodriguez's § 1983 claim against SHP, and enters Rule 54(b) final judgment in favor of Navarro County. The court otherwise denies the SHP Defendants' motion to dismiss. Rodriguez's § 1983-based deliberate indifference claim against Hullett and her state-law negligence claim against the SHP Defendants remain to be litigated.

**SO ORDERED**.

December 2, 2020.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

---

[14]Rule 12(d) provides that all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.