IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IRENE RODRIGUEZ, individually and as parent and legal guardian of A.R. and B.R., et al., | § § § § | |
| Plaintiffs, | § § | |
| VS. | § § | Civil Action No. 3:20-CV-0045-D |
| SOUTHERN HEALTH PARTNERS, INC., et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Irene Rodriguez ("Rodriguez") brings this lawsuit on behalf of herself and as parent and legal guardian of her surviving prematurely-born twin, A.R. Plaintiff Maria Antonia Santos ("Santos") brings this lawsuit as representative of the estate of B.R., Rodriguez's other prematurely-born twin, who is now deceased. Rodriguez and Santos (collectively, "plaintiffs") allege that defendants Southern Health Partners, Inc. ("SHP"), Grady Shaw, M.D. ("Dr. Shaw"), and Linda Hullett, R.N. ("Hullett") failed to provide proper prenatal care to Rodriguez while she was incarcerated as a pretrial detainee at the Navarro County Jail (the "Jail"). Defendants move for summary judgment and to strike plaintiffs' designated medical experts. For the reasons that follow, the court grants the motion for summary judgment as to Rodriguez's individual claims against Dr. Shaw and otherwise denies the motion.

I

The court assumes the parties' familiarity with its prior memorandum opinions and orders in this case, which recount the background facts and procedural history.[1]

In a combined, interrelated motion, defendants seek summary judgment and to strike plaintiffs' designations of Robert James Carpenter, Jr., M.D. ("Dr. Carpenter") and Donald F. Meyn, Jr., M.D. ("Dr. Meyn") as expert witnesses. Plaintiffs oppose the motion, which the court is deciding on the briefs, without oral argument.

II

Defendants first contend that they are entitled to summary judgment on the ground that plaintiffs' claims against Dr. Shaw are time-barred.[2]

A

Defendants maintain that any claims against Dr. Shaw expired two years after he examined Rodriguez, and, because Rodriguez admits that Dr. Shaw only examined her on December 27, 2017, the applicable two-year statute of limitations ran on these claims on

---

[1]*See Rodriguez v. S. Health Partners, Inc.*, 2020 WL 2928486, at *1-2 (N.D. Tex. June 3, 2020) (Fitzwater, J.); *Rodriguez v. S. Health Partners, Inc.*, 2020 WL 7056336, at *1-2 (N.D. Tex. Dec. 2, 2020) (Fitzwater, J.).

[2]Defendants sometimes appear to maintain that this same limitations argument applies as well to claims against Hullett. But defendants state several times in their motion that they are only seeking summary judgment based on limitations as to the claims against Dr. Shaw. In light of these repeated requests for relief that are confined to claims against Dr. Shaw, the court will only address whether the claims against Dr. Shaw are time-barred. This interpretation of defendants' motion is in fact consistent with the rule that "[i]t is error to grant summary judgment on a ground not raised." *State Farm Fire & Cas. v. Whirlpool Corp.*, 2012 WL 2422922, at *2 (N.D. Tex. June 27, 2012) (Fitzwater, C.J.).

December 27, 2019.  Defendants posit that this lawsuit, filed on January 8, 2020, is too late with respect to the claims against Dr. Shaw.

Plaintiffs rely on three arguments in response.  First, they contend that the date on which Dr. Shaw allegedly committed the tort in question is not readily ascertainable: Dr. Shaw commenced a course of treatment for Rodriguez that lasted many days, and the statute of limitations did not actually expire until January 9, 2018.

Second, plaintiffs posit that Texas law provides that the statute of limitations is tolled when adequate pre-suit notice is provided to the defendant.  According to plaintiffs, they gave such notice, thereby tolling the statute of limitations for a period of 75 days following delivery of the notice.

Third, plaintiffs maintain that the claims against Dr. Shaw brought on behalf of A.R. and B.R. are not time-barred because the two-year statute of limitations does not apply to minors.

B

Because limitations is an affirmative defense, defendants will bear the burden of proof on this defense at trial.  *Dennington v. Brinker Int'l Payroll Co.*, 2010 WL 4352619, at *1 (N.D. Tex. Nov. 3, 2010) (Fitzwater, C.J.).  Accordingly, to obtain summary judgment on this defense, they must "establish 'beyond peradventure all of the essential elements of the … defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th

Cir. 1986)).[3]

## C

Defendants maintain that the only statute of limitations that applies to plaintiffs' claims against Dr. Shaw arises under Tex. Civ. Prac. & Rem. Code Ann. § 74.251 (West 2003), a provision of the Texas Medical Liability Act ("TMLA"). Section 74.251(a) provides, in relevant part:

> no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed; provided that, minors under the age of 12 years shall have until their 14th birthday in which to file, or have filed on their behalf, the claim.

The parties do not dispute that § 74.251(a) governs this case.

This statute of limitations begins to run "from one of three possible dates: (1) the occurrence of the breach or tort; (2) the date the health care treatment that is the subject of the claim is completed; or (3) the date the hospitalization for which the claim is made is completed." *Rowntree v. Hunsucker*, 833 S.W.2d 103, 104 (Tex. 1992) (citing *Kimball v. Brothers*, 741 S.W.2d 370, 372 (Tex. 1987)). "[T]he Texas Supreme Court has repeatedly held that a plaintiff may not simply choose the most favorable of the three dates." *Karley v. Bell*, 24 S.W.3d 516, 519 (Tex. App. 2000, pet. denied). "Rather, if the date the alleged tort

---

[3]Defendants' motion refers to the standard for evaluating a statute of limitations defense in the context of a Fed. R. Civ. P. 12(b)(6) motion to dismiss, which differs from the standard for a motion for summary judgment.

occurred is ascertainable, limitations must begin on that date." *Shah v. Moss*, 67 S.W.3d 836, 841 (Tex. 2001) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 886 (Tex. 1999)).

Texas courts have held that the date of a tort is ascertainable even where the plaintiff is complaining of the *failure* to provide treatment, such as follow-up examinations and testing. For example, in *Rowntree* the Supreme Court of Texas addressed a "claim that [the doctor] breached a duty to perform the proper examinations from which he should have detected [the complained-of injury]." *Rowntree*, 833 S.W.2d at 108. The court held that "the statute of limitations began to run on the date of the alleged wrongful act[,]" which was "ascertainable from the facts of the case" as the last day that the plaintiff visited the doctor's office. *Id.* Other Texas courts have reached similar conclusions, holding that, where a plaintiff complains of a physician's omissions rather than affirmative conduct, the date of the tort is readily ascertainable as the last date on which the physician had an opportunity to act but did not. *See, e.g.*, *Karley*, 24 S.W.3d at 521; *Husain v. Khatib*, 964 S.W.2d 918, 920 (Tex. 1998) (per curiam); *Shah*, 67 S.W.3d at 845.

The statute of limitations is tolled for 75 days, however, when timely and proper pre-suit notice of a health care liability claim is given. In an effort to "encourage parties to negotiate and settle disputes *prior* to suit," *Hebner v. Reddy*, 498 S.W.3d 37, 42 (Tex. 2016) (emphasis in original) (quoting *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 189 (Tex. 2012)), Texas law "requires anyone asserting a claim under the [TMLA] to provide written notice by certified mail to 'each physician or health care provider against whom such claim is being made at least 60 days before the filing of a suit.'" *Id.* (quoting Tex. Civ. Prac.

& Rem. Code Ann. § 74.051(a) (West 2003)). "Providing notice of a health care liability claim will toll the statute of limitations for seventy-five days, if the notice is 'given as provided' in [the TMLA]." *Jose Carreras, M.D., P.A. v. Marroquin*, 339 S.W.3d 68, 69 (Tex. 2011) (quoting Tex. Civ. Prac. & Rem. Code Ann. § 74.051(c) (West 2003)).

But "[f]or a claim's notice and authorization form to toll limitations for 75 days under Section 74.051(c), they must be sent at least 60 days before filing suit and within the normal limitations period." *Flanigan v. Nekkalapu*, 613 S.W.3d 361, 364 (Tex. App. 2020, no pet.). And "[t]he notice must be accompanied by the authorization form for release of protected health information as required under Section 74.052." Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a) (West 2003). Section 74.052 provides an authorization form that is to be completed by a claimant; the law dictates that "[t]he medical authorization required by this section shall be in the following form[.]" Tex. Civ. Prac. & Rem. Code Ann. § 74.052(c) (West 2003).

D

1

Defendants contend that the ascertainable date on which Dr. Shaw allegedly breached a duty owed to plaintiffs was December 27, 2017, so any claims against him were time-barred as of December 28, 2019. According to defendants, because the plaintiffs filed this lawsuit on January 8, 2020, plaintiffs cannot prevail on these claims. Plaintiffs' first responsive argument is that the date on which the tort occurred is not ascertainable, so the statute of limitations began to run on January 9, 2018, when Dr. Shaw ceased treating

Rodriguez.  This is true, plaintiffs contend, because "[Dr.] Shaw breached the standard of care when he failed to follow up on [Rodriguez's] high-risk pregnancy of which he had actual notice" and "his responsibility to [Rodriguez] was ongoing until she was no longer his patient[.]"  Ps. Resp. Br. (ECF No. 105) at 28.

Plaintiffs' argument is foreclosed by Texas law.  As discussed above, several Texas courts—including the Supreme Court of Texas—have held that where the plaintiff complains of a doctor's failure to provide certain types of treatment, the date of the tort is ascertainable and is typically the last time that the doctor examined or otherwise visited with the plaintiff. Plaintiffs allege that Dr. Shaw failed to adequately follow-up with Rodriguez and provide ongoing care.  This is the precise type of conduct involved in cases such as *Rowntree*. Accordingly, the date on which the statute of limitations began to run was the last date that Dr. Shaw examined Rodriguez.  Rodriguez admits that the only time that Dr. Shaw saw her was on December 27, 2017.

Plaintiffs' reliance on the Supreme Court of Texas' decision in *Chambers v. Conaway*, 883 S.W.2d 156 (Tex. 1993), is misplaced.  In *Chambers* the court held that the physician whom the plaintiff claimed failed to provide treatment conforming with the applicable standard of care had failed to establish that the statute of limitations barred the suit against him.  *Id.* at 159.  But the physician in *Chambers* saw the plaintiff several times, and the court concluded that the statute of limitations began to run from the last day on which the physician met with the plaintiff.  *Id.* at 158.  Accordingly, *Chambers* does not undermine this court's conclusion in the present case.

- 7 -

2

Plaintiffs next contend that the statute of limitations should be tolled under Tex. Civ. Prac. & Rem. Code Ann. § 74.051(a).  They maintain that they gave notice in compliance with § 74.051(a) and that the statute of limitations was therefore tolled for 75 days pursuant to § 74.051(c).  The court disagrees.

Defendants have established that the notice letter—which all parties agree is the only form of notice sent to defendants—is deficient.  It was not sent at least 60 days before suit was filed, as Texas law requires.  *See Flanigan*, 613 S.W.3d at 364; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 74.051(c) (West 2003).  Accordingly, defendants have established beyond peradventure that the statute of limitations was not tolled as to Rodriguez's claims against Dr. Shaw.[4]

3

Plaintiffs' final opposition argument is that the two-year statute of limitations prescribed by § 74.251 does not apply to any claims brought on behalf of A.R. and B.R. because they were minors when this suit was filed.

A Texas court of appeals has held that § 74.251 "as applied to minors … is unconstitutional under the open courts provision contained in article I, section 13 of the Texas Constitution."  *Adams v. Gottwald*, 179 S.W.3d 101, 103 (Tex. App. 2005, pet.

---

[4]Defendants also maintain that the notice was deficient because it was not accompanied by a full list of plaintiffs' medical treatment providers, as required by statute. The court need not address this argument because defendants have established that the notice was deficient in another way.

- 8 -

denied).  If § 74.251 nevertheless governs the instant case, then A.R. and B.R., as "minors

under the age of 12 years," would have had "until their 14th birthday in which to file, or have

filed on their behalf, the claim."  Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (West

2003).  But if § 74.251 in fact violates the Texas constitution when applied to minors, then

a different provision of Texas law would provide that the statute of limitations was tolled

until their 18th birthday.  *See Montalvo v. Lopez*, 466 S.W.3d 290, 293 (Tex. App. 2015, no

pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.001 (West 2002)).  The claims brought

on behalf of A.R. and B.R. fall squarely within either potentially applicable statute of

limitations, and, therefore, are not time-barred.[5]

## E

Defendants have established beyond peradventure that Rodriguez's individual claims

against Dr. Shaw are time-barred.  Accordingly, defendants' motion for summary judgment

is granted in this respect.  Defendants have failed, however, to show that the claims against

Dr. Shaw brought on behalf of A.R. and B.R. are likewise time-barred.  Thus the motion for

summary judgment is denied as to those claims.

## III

Defendants next move for summary judgment on the ground that plaintiffs have failed

to designate expert witnesses qualified under Fed. R. Evid. 702 and Tex. Civ. Prac. & Rem.

---

[5]Defendants argue in their reply brief that there are no claims asserted against Dr. Shaw on behalf of A.R. and B.R.  But this argument ignores significant portions of the third amended complaint that clearly appear to contain allegations made on behalf of A.R. and B.R. against Dr. Shaw.  *See, e.g.*, 3d Am. Compl. (ECF No. 81) at ¶¶ 131, 133-36, 144.

Code Ann. § 74.401 (West 2003) to testify to the standard of care that Dr. Shaw and Hullett should have provided to Rodriguez and her twins.

A

Defendants contend that Drs. Carpenter and Meyn are not qualified to testify because they have not been trained to practice medicine in a correctional setting. Defendants also maintain that Drs. Carpenter and Meyn do not possess the knowledge and training necessary to testify because they practice in different specialties from Dr. Shaw and nothing in their backgrounds qualifies them to testify to Hullett's obligations as a nurse.

Plaintiffs respond that experts need not practice in the same specialty or setting to provide relevant, helpful, and reliable opinions. They maintain that doctors can testify to the standards of care applicable to nurses so long as the doctors are familiar with the standards. Plaintiffs therefore contend that they have designated expert witnesses whose testimony adequately establishes the applicable standards of care, deviation from those standards, causation, and damages.

B

Under both federal and Texas law, plaintiffs bear the burden of establishing that the testimony of their expert witnesses is admissible. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 n.10 (1993) (federal law); *see also Baylor Univ. Med. Ctr. v. Biggs*, 237 S.W.3d 909, 915 (Tex. App. 2007, pet. denied) (Texas law). Although the standards applied to determine the admissibility of particular expert testimony are procedural, so the federal standards typically control in federal court, "[i]t is well-established that a state's evidentiary

- 10 -

rules can have substantive aspects in certain types of cases." *Coleman v. United States*, 912 F.3d 824, 832 (5th Cir. 2019) (citing *Conway v. Chem. Leaman Tank Lines, Inc.*, 540 F.2d 837, 839 (5th Cir. 1976)). And under Fed. R. Evid. 601, state evidentiary rules regarding witness competence are pertinent when state law provides the rule of decision in a case. *Id.* Thus in order to provide admissible testimony for purposes of establishing the standard of care applicable to plaintiffs' state-law claims, an expert must "satisfy both Rule 601's competency requirements (which in the instant case incorporate the requirements of Texas's Section 74.401) and Rule 702's expert witness admissibility requirements." *Id.* at 833.[6]

C

The court first addresses whether the proposed expert testimony should be admitted under Rule 702.

1

Under Rule 702, "[t]he court may admit proffered expert testimony only if the

---

[6]This rule likely does not apply to plaintiffs' federal claims brought under 42 U.S.C. § 1983. *See Coleman*, 912 F.3d at 832. A plaintiff asserting a claim under § 1983 is not required to establish, via expert testimony, the applicable standard of care as a threshold issue, because a medical malpractice claim brought under state law is wholly distinct from a constitutional violation. *See, e.g.*, *Bass v. Sullivan*, 550 F.2d 229, 231 (5th Cir. 1977); *Pierson v. Gonzales*, 73 Fed. Appx. 60, 60 (5th Cir. 2003) (per curiam). Indeed, proof of medical malpractice alone is insufficient to prove a violation of the United States Constitution. *See, e.g.*, *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Accordingly, even if the court agreed with defendants' argument that the expert testimony proffered by plaintiffs is not sufficient to satisfy the burden established by Texas law, this conclusion would not be dispositive of plaintiffs' federal claims. But because the court concludes that the expert testimony in question comports with both federal and state standards of admissibility, the court need not resolve this issue in deciding the instant motion.

- 11 -

proponent, who bears the burden of proof, demonstrates that (1) the expert is qualified, (2) the evidence is relevant to the suit, and (3) the evidence is reliable." *Nunn v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 2540754, at *2 (N.D. Tex. June 22, 2010) (Fitzwater, C.J.) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)).

The first requirement is that the expert be qualified.  "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting Rule 702).  "Rule 702 does not mandate that an expert be highly qualified in order to testify about a given issue. Differences in expertise bear chiefly on the weight to be assigned to the testimony by the trier of fact, not its admissibility."  *Huss v. Gayden*, 571 F.3d 442, 452 (5th Cir. 2009) (citation omitted).

The second requirement is that the expert's testimony be relevant.  To be relevant, "expert testimony [must] 'assist the trier of fact to understand the evidence or to determine a fact in issue.'"  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 591).  "Relevance depends upon 'whether [the expert's] reasoning or methodology properly can be applied to the facts in issue.'" *Knight v. Kirby Inland Marine Inc.*, 482 F.3d 347, 352 (5th Cir. 2007) (quoting *Daubert*, 509 U.S. at 593); *see also* Rule 702(d) (requiring that "expert has reliably applied the principles and methods to the facts of the case").

The third requirement is that the expert's testimony be reliable.  "Reliability is

determined by assessing 'whether the reasoning or methodology underlying the testimony is scientifically valid.'" *Knight*, 482 F.3d at 352 (quoting *Daubert*, 509 U.S. at 592-93); *see also* Rule 702(c) (requiring that "testimony [be] the product of reliable principles and methods"). This review is typically conducted by considering the five non-exclusive *Daubert* factors.[7] But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of [the] testimony." *Kumho*, 526 U.S. at 150.

The burden is on the proponent of the expert testimony to establish its admissibility by a preponderance of the evidence. *See Daubert*, 509 U.S. at 592 n.10. The inquiry is flexible in that "[t]he relevance and reliability of expert testimony turns upon its nature and the purpose for which its proponent offers it." *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010) (citation omitted). "As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the [trier of fact's] consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

2

Applying the Rule 702 framework to the instant case, the court must first determine

_____

[7]The five nonexclusive *Daubert* factors are: (1) whether the expert's technique can be or has been tested; (2) whether the method has been subjected to peer review and publication; (3) the known or potential rate of error of a technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Daubert*, 509 U.S. at 593-94.

whether Drs. Carpenter and Meyn are qualified. Their curricula vitae are extensive and show that both have undergone several years of training in a relevant field. Dr. Carpenter is board certified in obstetrics and gynecology, has taught courses in obstetrics and gynecology, and has published several articles on topics related to obstetrics and gynecology. He is a reviewer for several relevant academic journals, has served on a number of related committees, and currently practices medicine in the area of obstetrics and gynecology.

Dr. Meyn is board certified in general pediatrics and in neonatal-perinatal medicine. He also completed several post-doctoral training programs in pediatrics and neonatology, and he has published and presented research in these fields. He has practiced neonatology since 2006 and presently practices with a company that provides neonatology services. Accordingly, both experts are qualified to opine on the issues involved in this case, such as the standard of care that should be exercised when treating a patient who is pregnant with twins and displaying signs of imminent labor.

The second factor the court must consider is whether the experts' testimony will be relevant. Because they intend to testify to critical issues in this case, such as standard of care, it is clear that the testimony is relevant.

The third factor is whether the testimony is reliable. The reasoning and methodology that Drs. Carpenter and Meyn have employed are of a kind used repeatedly in medical malpractice cases. The doctors testified in their depositions that they reviewed the medical records of the plaintiffs and relied on their training and knowledge to reach certain conclusions about the treatment that defendants administered. Because "questions relating

to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility," *Viterbo*, 826 F.2d at 422, the court concludes that their deposition testimony is sufficient to establish that their opinions are admissible. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596. Those tools remain available to defendants at trial. Accordingly, the court holds that the testimony of Drs. Carpenter and Meyn is admissible under Rule 702.

D

The court next turns to the question whether the expert testimony of Drs. Carpenter and Meyn is admissible under Texas law.

1

In Texas, the plaintiff bears the burden of establishing the standard of care applicable to the defendant-doctor "as a threshold issue before the factfinder may consider whether the defendant breached that standard of care to the extent it constituted negligence." *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing *Quijano v. United States*, 325 F.3d 564, 567 (5th Cir. 2003)). "Unless the mode or form of treatment is a matter of common knowledge or is within the experience of the layman, expert testimony will be required" to satisfy this burden. *Hood v. Phillips*, 554 S.W.2d 160, 165-66 (Tex. 1977).

Under Texas law,

> [e]xperts are qualified to opine on the applicable standard of
> care if they (1) are practicing medicine at the time they give the
> opinion or were practicing medicine when the claim arose; (2)
> have knowledge of the acceptable medical standards in the
> diagnosis, care, or treatment of the condition involved in the
> claim; and (3) are qualified on the basis of training or experience
> to opine as an expert on those standards.

*Morrison v. Asamoa*, 648 S.W.3d 628, 644 (Tex. App. 2022, no pet.) (citing Tex. Civ. Prac.
& Rem. Code Ann. § 74.401(a) (West 2003)).  Experts are "qualified on the basis of training
or experience," as a matter of law, "if they are (1) board certified or have other substantial
training or experience in an area of medical practice relevant to the claim and (2) actively
practicing medicine in rendering medical care relevant to the claim."  *Id.* (first citing
*Granbury Minor Emergency Clinic v. Thiel*, 296 S.W.3d 261, 266 (Tex. App. 2009, no pet.)
and then citing Tex. Civ. Prac. & Rem. Code Ann. § 74.401(c) (West 2003)).

Texas law "does not focus on the defendant doctor's area of expertise but on the
condition involved in the claim." *Thiel*, 296 S.W.3d at 267.  In other words, "the applicable
'standard of care' and an expert's ability to opine on it are dictated by the medical condition
involved in the claim and by the expert's familiarity and experience with it, not by the
defendant doctor's area of expertise." *Id.* (citing *McKowen v. Ragston*, 263 S.W.3d 157, 162
(Tex. App. 2007, no pet.); *see also Blan v. Ali*, 7 S.W.3d 741, 746 (Tex. App. 1999, no pet.)
(admitting proffered expert testimony from a neurologist regarding standard of care
applicable to emergency room hospitalist).  Where the subject matter of the expert testimony
"is common to and equally recognized and developed in all fields of practice, any physician

- 16 -

familiar with the subject may testify as to the standard of care." *Blan*, 7 S.W.3d at 745-46 (citing *Garza v. Keillor*, 623 S.W.2d 669, 671 (Tex. App. 1981, writ ref'd n.r.e.)). Thus an expert "need not be a specialist in the particular area of the profession for which testimony is offered." *Owens v. Handyside*, 478 S.W.3d 172, 185 (Tex. App. 2015, pet. denied).

Additionally, "[a] physician is qualified to testify as an expert regarding whether a nonphysician healthcare provider [such as a nurse] departed from the accepted standards of care" so long as there is a basis to conclude that the expert is familiar with the standard of care for both nurses and doctors. *Harvey v. Kindred Healthcare Operating, Inc.*, 578 S.W.3d 638, 647 (Tex. App. 2019, no pet.); *see also Baylor Med. Ctr. at Waxahachie, Baylor Health Care Sys. v. Wallace*, 278 S.W.3d 552, 559 (Tex. App. 2009, no pet.).

2

Defendants do not challenge the general medical qualifications of Drs. Carpenter and Meyn. For example, defendants do not suggest that Drs. Carpenter and Meyn are not actively practicing medicine, as the statute requires. And as already discussed, the curricula vitae and depositions of Drs. Carpenter and Meyn establish that they possess adequate knowledge, training, and experience to opine on the condition involved in the instant case.

Defendants' primary contention is that the testimony of Drs. Carpenter and Meyn is inadmissible under § 74.401 because they lack experience in a correctional setting. But this is primarily an objection to the weight to be given to their opinions, which is a question for the jury to decide as trier of fact, rather than to the admissibility of their testimony.

An expert need not specialize in the same area as the defendant-doctor in order to

provide relevant, admissible testimony.  *See Owens*, 478 S.W.3d at 185.  What matters is whether the expert is familiar with the condition at issue.  *Thiel*, 296 S.W.3d at 267.  It certainly appears from the credentials of Drs. Carpenter and Meyn that they would be familiar with twin pregnancies and imminent preterm labor, the conditions involved in this case.  And they are both board certified in an area of practice relevant to the instant case: namely, obstetrics and gynecology and neonatology, respectively.

And Texas courts have previously allowed testimony from experts who practice in settings markedly different from the one in which the plaintiff's injury occurred.  *See, e.g.*, *Blan*, 7 S.W.3d at 746.  Texas law clearly provides that the critical factor is the expert's familiarity with the medical condition involved, which plaintiffs have established that Drs. Carpenter and Meyn have.

Finally, both Drs. Carpenter and Meyn have experience working with nurses, overseeing the work of nurses, and contributing to some extent to the training of nurses.  Plaintiffs have proved that both are familiar with the standards of care applicable to nurses in their respective fields of medicine.  Therefore, Drs. Carpenter and Meyn are qualified to testify to the standard of care to which Hullett was expected to adhere in the instant case.

E

The expert testimony that plaintiffs intend to offer from Drs. Carpenter and Meyn comports with both federal- and state-law standards of admissibility.  Accordingly, defendants' motion to strike the expert designations of Drs. Carpenter and Meyn is denied, as is defendants' motion for summary judgment to the extent it is based on the ground that

plaintiffs have failed to adduce expert testimony establishing the relevant standard of care.

\* \* \*

For the reasons explained, the court grants defendants' motion for summary judgment with respect to Rodriguez's individual claims against Dr. Shaw and otherwise denies defendants' motion for summary judgment and to strike plaintiffs' expert witness designations.

**SO ORDERED**.

August 16, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE

- 19 -